**Joseph R. BERGER, Appellant,**

**v.**

**BOARD OF PSYCHOLOGIST EXAMINERS, Appellee.**

**No. 74–1047.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 16, 1975.

Decided Oct. 28, 1975.

---

27. *See United States v. Brewster,* 408 U.S. at 526, 92 S.Ct. at 2544, *quoting United States v. Johnson,* 383 U.S. at 185, 86 S.Ct. 749.

Edward L. Genn, Washington, D. C., for appellant.

E. Calvin Golumbic, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., for appellee. C. Francis Murphy, Corp. Counsel, Louis Robbins, Principal Asst. Corp. Counsel, Richard W. Barton and Earl A. Gershenow, Asst. Corp. Counsels, Washington, D. C., were on the brief for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and VAN PELT *, United States Senior District Judge for the District of Nebraska.

---

\* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The Act provides:

§ 2–486. Qualification requirements—Written examination—Application fee

The Commissioner shall grant a license to practice psychology to each applicant who submits satisfactory proof that—

(A) he is of good moral character;

(B) he holds either (1) a doctoral degree in psychology from an accredited college or university and has completed two years of postgraduate experience acceptable to the Commissioner, such two years not to include terms of internship, or (2) a doctoral degree from an accredited college or university in a field determined by the Commissioner to be related to psychology and has completed two years of postgraduate experience: *Provided,* That his experience and training are considered by the Commissioner to be comparable to the requirements set forth in (B)(1) of this subsection;

(C) he has passed an examination, written or oral or both, the scope and form of which shall be determined by the Commissioner: *Provided,* That at any given examination session all examinations shall be uniform; and

(D) his application has been accompanied by the fees required by the Commissioner.

MacKINNON, Circuit Judge:

Appellant Joseph R. Berger, a practitioner of psychology in the District of Columbia since 1961, challenges the constitutionality of a 1971 law requiring that all psychologists practicing in the District be licensed and specifying that licenses shall be issued only to applicants possessed of certain academic credentials. Berger contends that the Due Process Clause of the Constitution guarantees him some alternative means of demonstrating his professional competence, in the nature of a "grandfather" concession to psychologists practicing at the time the licensure requirement was enacted. We agree, and remand to the licensing board for action consistent with this opinion.

I

In 1971 Congress passed the District of Columbia Practice of Psychology Act, P.L. 91–657, D.C.Code § 2–481 *et seq.,* a licensing statute designed to impose minimum educational requirements upon all psychologists practicing in the District.[1]

§ 2–487. License without examination

(a) Notwithstanding any other provision of this subchapter, a license shall be issued without examination to any applicant who is of good moral character, who, at any time during the twelve-month period preceding the effective date of this subchapter, maintained a residence or office, or participated in psychological practice acceptable to the Commissioners, in the District of Columbia, and who, within one year after the effective date of this subchapter, submitted an application for license accompanied by the required fee, and who—

(1) holds a doctoral degree in psychology or forty-five credit hours taken subsequent to a bachelor's degree in courses related to psychology, from accredited colleges or universities, and has engaged in psychological practice acceptable to the Commissioner for at least two years prior to the filing of such application pursuant to this subchapter;

(2) holds a master's degree in psychology or twenty-four credit hours taken subsequent to a bachelor's degree in courses related to psychology, from accredited colleges or universities, and has engaged in psychological practice acceptable to the Commissioner for at least seven years prior to the filing of such application pursuant to this subchapter; or

**1058**

Section 7 of the Act, § 2–486, directs an appointed Commissioner to grant a license to anyone who (a) submits "satisfactory proof" of good moral character, (b) possesses a doctoral degree in psychology or in some other discipline deemed by the Commissioner to be sufficiently closely related, and (c) passes a written or oral examination. Section 8 of the Act is a limited "grandfather" clause which provides less stringent requirements for licensure for an applicant engaged in the practice of psychology in the District at the time the statute was enacted. The pertinent distinction is that section 8 permits substitution of a master's degree or "twenty-four credit hours taken subsequent to a bachelor's degree in courses related to psychology" and seven years' practice for possession of a doctorate and passage of an examination. Section 14 prescribes a misdemeanor penalty of up to $500 and/or six months in jail for failure to comply with the Act's licensing requirements.[2]

Appellant Berger was awarded a BCS degree in accounting from Southeastern University in 1943. He received training in the field of psychology from several psychiatrists and was given credit for numerous courses in various areas of psychology which he took at American University, the United States Department of Agriculture Graduate School, and the Washington School of Psychiatry. Although he has never been certified or licensed to practice in any other jurisdiction and is not a member of any professional psychological association, he has practiced psychology in the District of Columbia for approximately 14 years, co-authored a book on hypnosis published by Prentice-Hall, and lectured and written on clinical topics. The licensing board established by the Act ignored these facts and letters written by some of Berger's colleagues testifying to his competency, and denied his application because of his failure to make the threshold showing required by the Act. The board concluded:

Inasmuch as it is conceded by the applicant that he possesses neither a doctor's degree nor a master's degree in psychology, it is clear that he is not

(3) presents evidence of completion of a curriculum of study acceptable to the Commissioner, taken subsequent to a bachelor's degree in psychology, in courses related to psychology from an institution outside the United States acceptable to the Commissioner, and has engaged in psychological practice acceptable to the Commissioner for at least seven years prior to the filing of such application pursuant to this subchapter.

(b) For purposes of subsection (a) of this section, the term—

(1) "courses related to psychology" means any combination of the following behavioral science courses not necessarily in one department of one school: human development, education, educational psychology, guidance, counseling, guidance and counseling, vocational counseling, school psychology, school guidance, family counseling, counseling and psychotherapy, special education, learning disabilities, anthropology, sociology, human ecology, social ecology, rehabilitation counseling, group counseling and psychotherapy, or any substantially similar field of study acceptable to the Commissioner; and

(2) "psychological practice acceptable to the Commissioner" includes any job in which the job title or description contains any term acceptable to the Commissioner, or any of the following terms: psychologists, psychotherapy, group therapy, family therapy, art therapy, activity therapy, psychometry, measurement and evaluation, psychodiagnosis, pupil personnel services, counseling and guidance, special education, rehabilitation, or any job in which the person or organization was recognized or reimbursed under public or private health insurance programs by reason of being engaged in psychological practice.

2. Section 14 provides:

§ 2–493. Penalties

Any person who shall practice psychology, as defined in this subchapter, without having a valid, unexpired, unrevoked, and unsuspended license or certificate of registration issued as provided in this subchapter, shall be deemed guilty of a misdemeanor and, upon conviction, shall be fined not more than $500, or confined in jail for not more than six months, or both. Prosecutions shall be in the name of the District of Columbia by the Corporation Counsel or one of his assistants.

qualified for a license under Section 8 of the Act. '

Appellee's Brief at 9.

In 1971 Berger moved the District Court for a Temporary Restraining Order and Preliminary and Permanent Injunction to prevent enforcement of the Act and the denial of his right to practice psychology. He alleged that the absence of a proper grandfather clause and of discernible standards for licensure rendered the Act unconstitutional on its face. Judge Pratt granted Berger's request for a temporary restraining order but denied further relief without prejudice to reinstitution of the action after the licensing system had been established and Berger had exhausted his administrative remedies. In 1972 the Board rejected Berger's application for a license, and he immediately appealed to the District of Columbia Court of Appeals, attacking the statute as unconstitutional. In December 1973 the Court of Appeals ruled that because it sat as a reviewing board it could not pass on the constitutionality of the statute under which it proceeded, and consequently affirmed the Board's decision.[3] Proceeding under the express terms of the Act, which provides that "review [by the District of Columbia Court of Appeals] shall be subject to appeal to the United States Court of Appeals for the District of Columbia Circuit" Act, § 2–492, Berger brought his challenge here.

While Berger's appeal was pending in this court, Congress amended the Practice of Psychology Act, P.L. 93–515, passed December 7, 1974, to effect two modifications relevant to this controversy. Subsection (C) of section 13 was modified to remove all federal court jurisdiction to entertain appeals of D.C. Court of Appeals decisions, but only "with respect to petitions filed after the date of enactment of [these amendments]." Although this change lends support to appellee's argument that this court had appellate jurisdiction only through legislative oversight, it does not undercut our power to entertain an appeal in this case. Second, the statute's limited concession to current practitioners was expanded to accord an applicant with 24 post-graduate credit hours the same right as one holding a master's degree: either the degree or the course credits, plus seven years' practice prior to the filing of an application, entitled an individual to licensure. For one who has studied outside the United States, any "acceptable curriculum" taken upon completion of a bachelor's degree program is sufficient. Appellant Berger does not qualify even under these amendments.

Berger attacks the Act on four grounds: (1) that it fails to prescribe standards for licensure; (2) that the absence of meaningful grandfather rights or an equivalency provision constitutes invidious discrimination and a denial of due process; (3) that a classification which excludes from the profession a successful practitioner of 14 years is arbitrary and capricious; and (4) that a review board comprised of professional psychologists with apparent or actual qualifications under the Act is not a properly impartial adjudicatory body. Arguing for the licensing board, Corporation Counsel for the District of Columbia defends the statute as a rational exercise of congressional police power over the District and insists that this court cannot pass on constitutional issues in what is in essence an administrative proceeding.

## II

■ The Corporation Counsel raises a threshold objection to Berger's appeal

---

**3.** A majority of the District of Columbia Court of Appeals also concluded that they lacked jurisdiction to entertain any review proceeding: since Berger had admitted that the Board possessed no power under the Act to grant his request, the denial of a license was not "for any cause" under D.C.Code 1973, § 2–492(B).

Judge Nebeker, in a concurring opinion, insisted that "failure to have the requisite academic degree is a 'cause' for refusing a license and such may be reviewed by this court." *Berger v. Board of Psychologist Examiners,* 313 A.2d 602, 607 (D.C.App.1973).

which we must consider before we reach the merits of this dispute. The argument is that Berger is precluded from challenging the constitutionality of a statute under which he has sought licensure. Corporation Counsel insists that Berger may not avail himself of the statutory review procedure outlined in the Act in order to prosecute that constitutional challenge, but must instead attend the institution of criminal proceedings against him for violating the licensure requirement, at which point his constitutional claim may be interposed as a defense. Because Corporation Counsel has both misapprehended the scope of Berger's constitutional attack on the Act and sought support from inapposite precedent, we conclude that this preliminary contention is insubstantial.

Corporation Counsel persuaded the District of Columbia Court of Appeals below that Berger should not be allowed to challenge the validity of the Act in a proceeding instituted under its review procedures. That court concluded that since Berger was aware the Board of Psychologist Examiners lacked the power to waive the academic requirements for licensure at the time of his administrative hearing, he

> expected no relief from the Board. As far as he was concerned, the proceeding before the Board was a formality, used merely as a step to come to this court. Having gotten here by that procedure, in effect he seeks to institute an original action to have this court declare the Act invalid and unconstitutional. Does he have a right to institute such action and do we have a right to entertain it? We think not.[4]

Two interpretations of this determination are possible. Corporation Counsel argues that the Court of Appeals found applicants for licensure proceeding under the review provisions of the Act to be

utterly without an avenue of constitutional attack, and urges us to concur in that judgment. Alternatively, we might conclude that the Court of Appeals declined to pass on the constitutional claim because the Act specifically gave it the more limited function of *reviewing* Board decisions, in contradistinction to this court's jurisdiction to entertain *appeals* of rulings by the District of Columbia Court of Appeals. That court had no occasion to decide the breadth of our appellate jurisdiction, and the Corporation Counsel is in error in arguing that its decision foreclosed our scrutiny of the constitutionality of the Act.

In fact we need not define the difference between our jurisdiction on appeal and that of the D.C. Court of Appeals in review proceedings. In our opinion either tribunal has the power to pass on the particular constitutional claim Berger advanced. He sought not an erosion of the statutory scheme by which this court assumes appellate jurisdiction, but rather a simple declaration, consistent with the major provisions of the Act, that the Board's refusal to test his professional competence by some standard other than his academic credentials constituted a violation of fundamental due process. We might append to the statute an appropriate proviso designed to rectify this constitutional infirmity, without substantial modification of the statutory plan by which we are called to review Berger's administrative odyssey.

A judicial declaration that the Act must include an alternative criterion of Berger's professional skill is quite distinct from the results sought in the cases to which Corporation Counsel attempts to draw an analogy—for example, the invalidation of a trademark registration statute at the behest of one who had long profited by such registration,[5] or the voiding of a law allowing the federal government to acquire an appellant's land, when the prospect of condemnation had yielded the appellant substantial

---

**4.** *Berger v. Board of Psychologist Examiners,* 313 A.2d 602, 604 (D.C.App.1973).

**5.** *Fulton Waterworks v. Bear Lithia Springs Co.,* 47 App.D.C. 437 (1918).

proceeds.[6] These cases involve the concept of equitable estoppel, and would be apposite to the instant controversy if Berger attacked the validity of the licensing statute after he had enjoyed the benefits of licensure. But they do not limit the scope of his challenge to the Act in an initial application for a license.

We thus reject the Corporation Counsel's challenge to the jurisdiction of this court over Berger's constitutional claim. We do not risk cutting off the limb upon which we sit by entertaining his limited challenge to the validity of the Act's licensure qualifications.

### III

Our opportunity and obligation to pass on Berger's claim to meaningful grandfather treatment under the District's licensing scheme is in a sense unique. Whether our short-lived appellate jurisdiction under the Act was the product of legislative oversight, it was surely anomalous.[7] Because the power to license the practice of psychology belongs generally to the states and is the subject of congressional enactment only in the District of Columbia, state courts will in almost every instance pass on the validity of specific licensure qualifications. But the question we confront is no less important for its rarity: appellant, and perhaps many other psychologists in the District of Columbia who have acquired their skills through apprenticeship, may lose the right to practice their profession because the Congress has suddenly decided the field needs regulating. But the very reason psychology has not been regulated before is that it has been and remains an amorphous, inexact and even mysterious discipline. Possession of a graduate degree in psychology does not signify the absorption of a corpus of knowledge as does a medical, engineering, or law degree; rather it is simply a convenient line for legislatures to draw, on the brave assumption that whatever is taught in the varied graduate curricula of university psychology departments must make one a competent psychologist, or at least competent enough to be allowed to take a licensing examination. While it may not be irrational to assume that this academic background should in the future be a prerequisite to the practice of psychology, it is of questionable rationality to insist that current practitioners, who may have studied and practiced at a time when graduate courses in psychology were even less meaningful, are conclusively incapable of meeting today's new standards because they did not take those courses.[8] Supporting this view are several decisions by the United States Supreme Court upholding state licensing statutes which presumed *competence* on the part of professionals who had practical experience but no degree.[9]

---

6. *Young v. Anderson,* 81 U.S.App.D.C. 379, 160 F.2d 225, *cert. denied,* 331 U.S. 824, 67 S.Ct. 1316, 91 L.Ed. 1840 (1947).

7. The D.C. Court of Appeals below was "puzzled" that the Act's grant of appellate jurisdiction to this court was contemporaneous with enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970, effective February 1, 1971, rendering the D.C. Court of Appeals the "highest court of the District of Columbia," D.C.Code 1973, § 11–102, with jurisdiction to review orders and decisions of any agency of the District of Columbia, D.C.Code 1973, § 11–722. Congress simultaneously withdrew this court's previous power to review decisions of the D.C. Court of Appeals, with limited exceptions. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.App.1971).

8. As Berger notes, the D.C. statute would deny a license and even a hearing to Erik Erickson,

perhaps the most eminent psychologist of our time, for his failure to glean his considerable insights from an academic regimen.

9. In both *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889), and *Watson v. Maryland,* 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910), the Court upheld state physician licensing statutes against charges that without due process of law they deprived practicing physicians (who did not meet the requirements of the grandfather clause) of a vested right to practice their profession. The West Virginia statute allowed to practice medicine only those who were (a) graduates of reputable medical schools, (b) doctors who had practiced continuously for ten years in the state, or (c) doctors who had passed the examination given by the state Board of Health. Under the Maryland law all doctors were blanketed in who had been practicing four years

The limited nature of Berger's challenge to the D.C. statute bears reemphasis. He does not argue that anyone has an absolute right to practice a profession. The logic of his argument allows that a legislature might ban the practice of psychology altogether, on a conclusion that the discipline was not beneficial or that it should be subsumed by traditional medical practice. Appellant maintains only that current practitioners should not be denied the opportunity to continue their chosen profession, without prior notice of the licensing requirement and without some occasion to demonstrate their adequacy to the task. In short, in order to protect his "liberty" and "property" interests in his profession,[10] appellant seeks an opportunity to rebut the statutory presumption of his incompetence.

■ The Supreme Court has long held irrebuttable statutory presumptions to be disfavored. See, e. g., Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Tot v. United States, 319 U.S. 463, 468–96, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926). Recently the Court has struck down irrebuttable presumptions that unmarried fathers are unqualified to raise children, Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 551 (1972); that women more than four months pregnant cannot teach school, Cleveland Board v. Lafleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); and that those who apply to the Connecticut State University system as non-residents can never become residents for the purpose of paying lower in-state tuition, Vlandis v. Kline, 412 U.S. 441, 446–53, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1974). See also U. S. Department of Agriculture v. Murry, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767

(1973); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); cf. Morrisey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In Vlandis, in response to the argument that the presumption of non-residency provided "a degree of administrative certainty," Justice Stewart noted that "the Constitution recognizes higher values than speed and efficiency," 412 U.S. at 451, 93 S.Ct. 2236, citing Stanley v. Illinois, 405 U.S. at 656, 92 S.Ct. 1208. Justice Stewart continued:

> The State's interest in administrative ease and certainty cannot, in and of itself, save the conclusive presumption from invalidity under the Due Process Clause where there are other reasonable and practicable means of establishing the pertinent facts on which the State's objective is premised.

412 U.S. at 451, 93 S.Ct. at 2236.

The principle of Vlandis is applicable to the facts of the instant case. A part, and presumably a significant part, of the D.C. licensing process is the administration pursuant to D.C.Code § 2–481 of an examination devised by the licensing board to applicants holding a doctoral degree. No reason has been suggested why the Board could not fashion a similar examination and substitute passage of that test for the current requirement of passing an examination plus holding a degree. As an administrative body the Board cannot ignore or reinterpret parts of the statute under which it operates. But on remand, following a declaration by this court that the statute's irrebuttable presumption does not accord with principles clearly set forth in the case law, the Board could proceed to determine whether Berger's extensive clinical experience, coupled with his limited academic training and apprenticeship, have afforded him a professional competence

---

before the enactment of the licensing statute and who could show that they had treated at least twelve persons within one year of that date. It is to be noted that in the case of physicians the risk to the individual patient from an unqualified practitioner is even greater than it is in the present case.

**10.** See Fitzgerald v. Hampton, 152 U.S.App. D.C. 1, 7 and n.21, 467 F.2d 755, 761 and n.21 (1972), and cases cited therein.

equivalent to that of a doctor of psychology who has only two years of acceptable postgraduate experience.

■ We conclude that the Act's irrefutable presumption arbitrarily and unreasonably deprives Berger of his constitutionally recognized interest in the practice of psychology [11] in violation of the Due Process Clause of the Fifth Amendment. Our decision cannot be wholly founded in any single opinion of the Supreme Court cited above, for those cases have involved statutory presumptions invalid as to all individuals covered by the respective acts. Here the irrebuttable presumption of professional incompetence absent a graduate degree is not invalid with respect to future psychologists, but only with respect to current practitioners who have no meaningful grandfather rights. But this distinction actually cuts in favor of applying the doctrine of *Vlandis* to this case: the *Vlandis* rule is based on due process notions, on the right to notice and hearing before final agency action, and it is precisely the inadequacy of the notice afforded current practitioners by the new D.C. licensing statute which makes the denial of grandfather rights unfair. Certainly a graduate degree may be required of a practicing psychologist, just as it is required of doctors and lawyers. The inequity of the statute is that it fails to account for those competent psychologists who embarked upon their profession when no degree was required and who thus are denied a fair opportunity to come within the statute's licensing requirements at this point.

[4] The federal courts have apparently not considered the issue we confront in this case, but at least one state court has entertained a similar claim and has reached a virtually identical conclusion. In *Taylor v. Hayes*, 131 Ill.App.2d 305, 264 N.E.2d 814 (1970), a panel of the Illinois Appellate Court found that state's Psychologist Registration Act to be unconstitutional as applied to a psychologist who had practiced for nine years before the statute's enactment and who had *not* been awarded a master's degree for his considerable post-graduate studies. The court held:

> In the instant case the right of the plaintiff to pursue his profession was fixed during the pre-regulatory period and any subsequent legislation affecting his profession must be reasonable as it affects his special situation. We find that the requirement that plaintiff, as a practicing psychologist at the time of the enactment of the Act, possess a master's or doctoral degree to qualify for registration is unreasonable and arbitrary and denied him due process of law since it effectively excludes him from continuing to practice without providing an alternative method for evaluating his ability.

264 N.E.2d at 818. The Illinois court declined, as we must, to compel its licensing board to grant the applicant licensure, but insisted that some method be devised to determine if the level of his professional skills warranted the granting of a license to him. The fact that the applicant in *Taylor v. Hayes* fell just short of the academic credentials the Illinois statute required does not undermine the reasoning of the case or make it less analogous to this litigation. Lest the *Taylor* decision be erroneously distinguished as an attempt by judicial fiat to weaken Illinois' licensure requirements in order to admit to practice a marginal case, we emphasize that the Illinois court voiced its concern in that case, as we do here, not with the specific duration of the graduate education required by the legislature, but with the absence of some non-academic criteria available on a grandfather basis to current practitioners. Whether an applicant previously engaged in the practice of psychology misses the statutory standard by an inch or a country mile, he must be accorded a fair opportunity to demonstrate his professional skill according to reasonable standards before he is denied the right to continue his practice.

11. *Id.*

Although the Supreme Court has stated that administrative efficiency alone does not justify violations of procedural due process through the use of unjustifiable presumptions, efficiency must always be a consideration. In that context it is significant that invalidating the Psychology Act's conclusive presumption *only with respect to individuals practicing at the time the Act was passed* imposes on the licensing board a definable burden of finite duration. As Berger's situation will probably not be common, and as the examination he and others similarly situated will have to pass will be administered by academically qualified psychologists with genuine concern for the quality of their profession in the District, affording this opportunity to rebut the statutory presumption hardly threatens to frustrate the Act and flood the city with charlatans.[12]

Accordingly, we remand the case to the D.C. Court of Appeals for further remand to the licensing board to administer to appellant Berger an examination designed to determine whether his professional skill is commensurate with that of new psychologists being currently licensed under the Act. In so doing, we do not act as a legislature to add this requirement to the statute, but rather strike down as unconstitutional that part of the statute which requires an applicant to have an academic credential as well as a certain number of years experience in order to qualify to take a license examination. Only by this action can we remedy the constitutional defect of the statute as it is applied to Berger and to other psychologists without the requisite academic credentials but possibly possessed of the necessary skills.

*Judgment accordingly.*

12. Recognizing that the Board he must face at a hearing on his application may not be favorably disposed toward him, Berger attacks the composition of the Board, alleging that a panel of statutorily qualified psychologists cannot assess his qualifications with impartiality, particularly in an area as small as the city of Washington. Though this claim is facially appealing, it ignores the realities of the situation: no one but a qualified psychologist can possibly assess his equivalency, just as admissions to the bar cannot be passed on by accountants.