**Edward J. HICKEY, Jr., Plaintiff,**
v.
**DISTRICT OF COLUMBIA COURT OF APPEALS et al., Defendants.**
Civ. A. No. 78–1276.
United States District Court,
District of Columbia.
July 21, 1978.

Daniel A. Rezneck, Washington, D. C., for plaintiff.

Fred F. Fielding, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Plaintiff, a graduate of the Potomac School of Law, filed this action to compel his admission to the District of Columbia Bar notwithstanding Rule 46 I(b)(3) of the Rules of the District of Columbia Court of Appeals which requires graduation from a law school accredited by the American Bar Association. In his motion for a preliminary injunction, filed July 19, 1978, he requests an order requiring defendants to permit him to sit for the District of Columbia bar examination to be administered on July 26 and 27, 1978. Defendants have filed a memorandum in opposition and the Court has heard argument.

 Plaintiff's motion must be considered in light of the traditional test set forth by the U. S. Court of Appeals for this Circuit in *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 104 U.S.App.D.C. 102, 259 F.2d 921 (1958) and *WMATA v. Holiday Tours,* 182 U.S.App. D.C. 220, 559 F.2d 841 (1977). Under that standard plaintiff has failed to demonstrate his entitlement to the extraordinary mandatory relief he seeks.

Insofar as the claim of injury to plaintiff is concerned, he has completed a three-year course of study at the Potomac School of Law, apparently with distinction. If he is never permitted to take the bar examination, he will lose his entire investment of time, money, and energy. Further, if he cannot sit for the current examination, he will at least lose some time, and it would be difficult as a practical matter (and possibly as a legal matter) to make him whole for the delay between now and such time as he might be allowed to sit for the bar should he ultimately prevail in this action on the merits.[1] Plaintiff also points to his rela-

---

1. Defendants also argue, relying upon *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), a case involving the discharge of a probationary government employee, that the

tively mature age and the fact that he is currently unemployed (although it appears that, as a retired naval officer, he is drawing a pension). Thus, there is little doubt that, absent an order from this Court, plaintiff will suffer some injury.

On the other hand, this litigation, including probable appellate review, may not reach its ultimate resolution for several months or even years, and it is unlikely that plaintiff will be finally admitted to the Bar, if at all, until then. Thus, the actual redress sought by the plaintiff, that is, the ability to practice law in this jurisdiction, could not, in any event, be provided at this juncture, and an order which would have the effect of permitting him to sit for the July 1978 bar examination might not, realistically, shorten the time period to his admission to the District of Columbia Bar.

Beyond that, it appears that if plaintiff now finds himself in a situation where he requires emergency relief, he must share at least some of the responsibility. He did not file this action in November 1977 when he first learned that a waiver of the requirements of Rule 46 would not be granted to graduates of the Potomac School of Law, nor did he file immediately after June 12, 1978, when the D. C. Court of Appeals finally refused that waiver to him. Indeed, plaintiff does not appear ever to have formally applied to take the bar examination, although that failure may be regarded as excused in view of the fact that it would have constituted a futile act. Finally, it is at least noteworthy that plaintiff, who is not a District of Columbia resident, might well be eligible, notwithstanding his status as a graduate of a non-accredited law school, to take the bar examination in his own state or another state in the metropolitan area. In short, plaintiff has demonstrated an injury which is irreparable if he is never allowed to take any bar examination, and which is of a lesser degree of

seriousness if he is not permitted to sit for the July 1978 bar examination of the District of Columbia.

It seems appropriate to treat the factors of injury to defendants and the public interest together, since in this instance they are inextricably linked. The D. C. Court of Appeals is the highest court of the District of Columbia, and its status is that of a state supreme court. Any order directed to it or its judges would be a serious intrusion into areas which not only are intrinsically matters of local judicial jurisdiction and concern, but which were deliberately transferred from this Court to defendants' control by the Court Reform and Criminal Procedure Act of 1970, 84 Stat. 473 (1970). As the U. S. Court of Appeals for the Ninth Circuit stated in *MacKay v. Nesbett*, 412 F.2d 846 (9th Cir. 1969), the general rule of noninterference by federal courts into matters of state bar admissions "serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems."

While principles of federal-state relationships, abstention, and comity must be given full deference, it does not follow that if there is federal jurisdiction, and if defendants and others under their control are violating plaintiff's constitutional or other federal rights, the Court should not or would not act. However, it is clear that in view of the impact such action would have both upon the defendants and the public interest, it should be taken only in compelling circumstances.

Thus, the critical issue on this motion is whether there is such a substantial likelihood of plaintiff's success on the merits that compelling circumstances are in fact present. These "merits" will be discussed under three headings: (1) jurisdiction, (2)

injury to plaintiff is too speculative for injunctive relief. However, in that instance, the temporary loss of income involved could have been recovered at a later time while here, as noted above, any such recovery is unlikely. More to

the point is *Carr v. Thompson*, 384 F.Supp. 544 (W.D.N.Y.1974), where the court held that an individual who was prevented from taking a civil service examination suffered irreparable injury.

constitutional claims, and (3) claims under the antitrust laws.

The law with respect to federal court jurisdiction in this field is not wholly settled. Defendants rely upon a number of decisions in this Circuit, but these cases are not dispositive. *Lent v. Committee on Admissions and Grievances* (Civil No. 386–72, Gesell, J., 1972) was decided primarily on mootness grounds. *Metropolitan Committee for the Investigation of the D. C. Bar v. Committee on Admissions* (Civil No. 74–177, Green, J., 1974) was concluded by an order which is silent on the basis for the jurisdictional defect found by the Court. And *Dormu v. District of Columbia Court of Appeals* (Civil No. 75–2037, Pratt, J., 1977), in which the Court found lack of jurisdiction, was affirmed by an opinion in which the U. S. Court of Appeals in somewhat equivocal language stated that "it is highly doubtful that we have jurisdiction to grant such relief under any circumstances; in any event, we are not about to do so" (D.C.Civ. No. 77–1674 (1978)). While there are scattered decisions elsewhere finding federal court jurisdiction over state bar admission matters (see, *e. g., Potts v. Honorable Justices,* 332 F.Supp. 1392 (D.Hawaii 1971)), and while in a number of cases, including those relied on by defendants, federal courts have reached the merits of attacks upon state bar admission procedures and standards— which presumably they felt they had the jurisdiction to do—the most solid precedents suggest an absence of jurisdiction. See *Doe v. Pringle,* 550 F.2d 596 (10th Cir. 1976); *Grossgold v. Supreme Court of Illinois,* 557 F.2d 122 (7th Cir. 1977); *MacKay v. Nesbett, supra; Jones v. Hulse,* 391 F.2d 198 (8th Cir. 1968).

It is not possible fully to harmonize these varying precedents except possibly upon the basis of the distinction made by the court in *Doe v. Pringle, supra,* which suggested that there would be no federal court review of orders denying particular applications for admission but that general rules and regulations governing admission in relation to federal constitutional claims are not immune from such consideration. That distinction may not always be easily applied, as this case bears out. However, the current state of the law is such that, while this Court is not prepared at this stage to dismiss the complaint for lack of jurisdiction, it is apparent that plaintiff will face a formidable hurdle in his efforts to succeed on the jurisdictional question.

Assuming that the Court should ultimately find subject matter jurisdiction, plaintiff would be faced with the further problem that on the substantive merits his expectation of success is relatively slim. A number of courts have held that the requirement of graduation from an accredited law school is a reasonable one which does not offend due process. See *Potter v. New Jersey Supreme Court,* 403 F.Supp. 1036 (D.N.J.1975), *affirmed,* 546 F.2d 418 (3rd Cir. 1976); *Hackin v. Lockwood,* 361 F.2d 499 (9th Cir. 1966); *Murphy v. State Board of Bar Examiners for the Commonwealth of Pennsylvania,* 429 F.Supp. 16 (E.D.Pa.1977). Plaintiff's reliance to the contrary on *Berger v. Board of Psychological Examiners,* 172 U.S. App.D.C. 396, 521 F.2d 1056 (1975) is misplaced. The Court there held only that the requirement of a graduate degree as a prerequisite to taking a licensing examination is invalid as applied to current practitioners with meaningful grandfather rights. As to future applicants, however, it found it to be reasonable to require graduate degrees of prospective licensees, "just as it is required of doctors and lawyers." 172 U.S.App.D.C. at 403, 521 F.2d at 1063.

■ Quite apart from decisional law, it appears to the Court that a requirement of graduation from an accredited law school constitutes a reasonable measure to maintain high standards in the legal profession, and that, at a minimum, this is a decision for the state accrediting agencies and highest courts of the states to make.[2]

---

2. Insofar as a related issue is concerned— whether such a requirement constitutes an unconstitutional delegation of state power to the American Bar Association, a private organization—again, a number of courts have rejected that contention. *Potter v. New Jersey Su-*

■ Plaintiff also attacks the action of the D. C. Court of Appeals on equal protection grounds. It is claimed that that court has not enforced its requirement of graduation from an accredited law school with consistency but has granted wholesale and systematic waivers to the graduates of the International School of Law, which, like the Potomac School of Law, is unaccredited. The record contains no explanation for this disparity of treatment. Absent such an explanation, it may well be that a finding of denial of equal protection would be appropriate. *Cf. Potter v. New Jersey Supreme Court, supra* (where the court inquired into the rationality of the distinctions made). However, it is too early to conclude that no reasonable explanation for the distinction exists and that defendants acted arbitrarily and unreasonably.[3] Moreover, the practice of granting waivers to students graduating from the International School of Law was apparently halted last year. Since at present neither they nor graduates of plaintiff's law school are being granted waivers, it is unlikely that plaintiff could successfully claim disparity of treatment in relation to members of the same class.

Plaintiff's reliance on the antitrust laws may be disposed of summarily. It has long been recognized that the antitrust laws do not apply to certain types of state action. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Supreme Court specifically applied that rule to actions of the highest courts of states promulgating bar disciplinary rules, and that decision clearly applies here. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), is not to the contrary, for that case involved action by a state bar, not a

state court, the Supreme Court expressly noting that the bar's minimum fee schedule was not compelled by the state supreme court. To be sure, the D. C. Court of Appeals has, to a significant degree, delegated certain of its bar admission functions[4] to the American Bar Association, a private organization. As more and more bar admission responsibilities are thus vested in private organizations, the *Parker v. Brown* exemption from the antitrust laws may ultimately be lost. However, it cannot be said that that point has been reached here. Further, in light of the unequivocal ruling in *Bates,* it appears unlikely that plaintiff will be able to prevail on that issue.

For the reasons stated, particularly the Court's conclusion that plaintiff is unlikely to prevail on the merits; that the relief requested is of a mandatory nature; that it would disturb the status quo; and that it would be directed against the highest court of the District; it is the opinion of this Court that plaintiff has not demonstrated his entitlement to the injunctive relief he seeks at this time.

It is accordingly, this 21st day of July, 1978,

ORDERED That the motion for a temporary restraining order and a preliminary injunction be and it is hereby denied.

---

*preme Court, supra; Lombardi v. Tauro,* 470 F.2d 798 (1st Cir. 1972).

**3.** No testimony was taken on the motion (although at oral argument defendants' counsel offered to provide such an explanation).

**4.** Included in this category would be the accreditation requirement; the local rule which adopts ABA standards governing transfers from nonaccredited schools to accredited schools; and acquiescence in alleged ASA pressure on accredited schools not to accept students from nonaccredited schools. See *e. g.,* Rule 46 I(b)(3) and (b)(4) of the D. C. Court of Appeals.