DONALD L. MILLER, Plaintiff-Appellee, v. THE DEPARTMENT OF PROFESSIONAL REGULATION *et al.*, Defendants-Appellants.

Second District    No. 2—95—0259

Opinion filed December 1, 1995.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Alison E. O'Hara and Jan E. Hughes, Assistant Attorneys General, of counsel), for appellants.

Ian A. Schwartz and Gregory E. Rogus, both of Segal, McCambridge, Singer & Mahoney, of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendants, the Department of Professional Regulation and Nikki Zollar, the Department's director (collectively referred to as the Department), appeal an order of the circuit court of McHenry County vacating a cease and desist order issued by the Department against plaintiff, Donald L. Miller. The cease and desist order directed plaintiff to refrain from engaging in the unlicensed practice of profes-

sional engineering in violation of the Professional Engineering Practice Act of 1989 (1989 Act) (225 ILCS 325/1 *et seq.* (West 1992)).

The following summary of the facts is taken from the common-law record. On December 21, 1992, the Department issued plaintiff a rule to show cause why an order to cease and desist from the unlicensed practice of professional engineering should not be entered against him. The rule to show cause alleged that plaintiff had engaged in the unlicensed practice of professional engineering by (1) consulting on, investigating, and evaluating electrical engineering systems; and (2) holding himself out to the public as a professional engineer. The rule to show cause cited cases in which plaintiff had testified as an expert on subjects such as the cause of failures in electrical systems and general standards in electrical engineering. The rule to show cause also set forth instances where plaintiff represented himself as an engineer in sworn testimony and in advertising.

On January 14, 1993, plaintiff submitted to the Department a written answer to the rule to show cause. In his answer, plaintiff stated that he graduated from California Polytechnic University in 1959 with a bachelor of science degree in electrical/electronic engineering. He admitted that he was not licensed as a professional engineer and that he had never sought such a license. He disputed the Department's allegation that he had been practicing professional engineering or had represented himself as a professional engineer. Plaintiff admitted, however, that he used the terms "Engineer," "Executive Senior Engineer," and "engineering" to describe his title and occupation. Plaintiff described his occupation as "loss investigation and legal expert testimony" for insurance companies, public adjusters, private corporations, and individuals. (For convenience, we refer to plaintiff's occupation as "investigative engineering.") He further stated that since he began the practice of investigative engineering in 1970, he had investigated over 1,200 losses throughout the United States and testified several hundred times as an expert witness in State and Federal courts. Finally, plaintiff requested that he be excepted from the 1989 Act's requirements because he believed his occupation did not involve the practice of professional engineering as defined in that Act.

On March 22, 1993, the Department issued plaintiff a cease and desist order finding, *inter alia*, that his answer to the rule to show cause was unsatisfactory. The Department also found that plaintiff had engaged in the unlicensed practice of engineering by "consulting, investigating, or evaluating engineering systems for the public" and noted that the 1989 Act listed "forensic engineering" and "energy analysis" among its examples of the practice of professional engineer-

ing. The Department further found that plaintiff had engaged in unlicensed practice by using the title "Engineer." Finally, the cease and desist order stated that the Department was not statutorily empowered to except plaintiff from the 1989 Act's licensing requirements and, in any event, that such an exception would not be in the best interests of the public.

Plaintiff then filed a complaint for administrative review seeking reversal of the cease and desist order. In a memorandum of law in support of his complaint, plaintiff asserted that the 1989 Act was unconstitutional on its face and as applied to him because it violated the due process and equal protection provisions of the United States and Illinois Constitutions. Specifically, plaintiff argued that prior to the passage of the 1989 Act investigative engineering did not fall within the statutory definition of professional engineering. Thus, plaintiff argued, he began the practice of investigative engineering before it was regulated as a branch of professional engineering, and the failure to allow him to continue as an investigative engineer through a "grandfather clause" constituted a denial of due process and equal protection.

In response, the Department filed a memorandum of law arguing that investigative engineering, as practiced by plaintiff, was impliedly included in the definition of professional engineering contained in statutes which had regulated the practice of professional engineering since 1941 and that plaintiff was not entitled to be "grandfathered" into the practice of professional engineering.

Following oral argument on plaintiff's complaint for administrative review (a transcript of which is not in the record), the trial court vacated the cease and desist order. In a written order, the trial court stated:

> "The court finds that the defendant[s'] failure to allow plaintiff to continue practicing forensic and/or investigative engineering through the use or application of a grandfathering provision constitutes an equal protection violation."

The Department filed a timely notice of appeal.

On appeal, the Department contends the trial court's order vacating the cease and desist order should be reversed because the 1989 Act is constitutional both on its face and as applied to plaintiff. In response, plaintiff apparently concedes that investigative engineering is included in the 1989 Act's definition of professional engineering. Plaintiff argues, however, that he began his career as an investigative engineer before it was included in the definition of professional engineering and, as a result, he acquired a vested right in the practice of his profession. Thus, plaintiff argues, the guarantees of due process

and equal protection in the Illinois and United States Constitutions require that he be allowed to continue to practice investigative engineering under a grandfather clause.

Preliminarily, we note that plaintiff's due process and equal protection arguments are premised on the assumption that in 1970, when he began his career as an investigative engineer, investigative engineering was not subsumed under the statutory definition of professional engineering. According to plaintiff, the 1989 Act is the legislature's first attempt to bring investigative engineering within the definition of professional engineering. The Department challenges this assumption and maintains that investigative engineering has been a regulated branch of professional engineering since 1941. Thus, before we address plaintiff's constitutional arguments, we must first consider his foundational contention that, prior to the passage of the 1989 Act, investigative engineering did not fall within the statutory definition of professional engineering. To do so, we trace the history of the regulation of professional engineering in Illinois.

Since 1941, the State of Illinois has provided a statutory scheme for the regulation of professional engineering, embodied in three statutes: the Professional Engineering Act of 1941 (1941 Act) (Ill. Rev. Stat. 1941, ch. 48$^{1}$/2, par. 1 *et seq.*); the Professional Engineering Act of 1945 (1945 Act) (Ill. Rev. Stat. 1945, ch. 48$^{1}$/2, par. 32 *et seq.*); and the Professional Engineering Practice Act of 1989 (1989 Act) (Ill. Rev. Stat. 1989, ch. 111, par. 5201 *et seq.*). Each of these statutes provided for the comprehensive regulation of the practice of professional engineering and set forth, *inter alia*, definitions and examples of the practice of professional engineering; educational qualifications for professional engineers; authorization for an agency charged with administering the statutes; provisions for the examination of qualified applicants; and provisions for discipline and punishment.

The first statute to regulate the practice of professional engineering in Illinois, the 1941 Act, defined professional engineering as:

> "[A]ny professional service such as consultation, investigation, evaluation, planning, design, or supervision of construction, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects, wherein the public welfare or the safeguarding of life, health or property is concerned or involved, when such professional service requires the application of engineering principles and data." Ill. Rev. Stat. 1941, ch. 48$^{1}$/2, par. 2.

In 1945, the legislature repealed the 1941 Act and replaced it with the 1945 Act (Ill. Rev. Stat. 1945, ch. 48$^{1}$/2, par. 32 *et seq.*). The 1945 Act defined professional engineering as follows:

"A person practices professional engineering, within the meaning of this Act, who plans or designs the physical parts of the following: railroads, railways, highways, subways, tunnels, canals, harbors, river improvements, docks and drydocks; levees; irrigation works; aircraft, air ports and landing fields; waterworks, sewers; sewage disposal works; plants for the generation of power; engines or motors for the utilization of power; boilers; refrigeration plants; air conditioning plants; heating plants; plants for the transmission or distribution of power; electrical plants which produce, transmit, distribute, or utilize electrical energy; works for the extraction of minerals from the earth; plants for the refining, alloying or treating of metal; chemical works and industrial plants involving the use of chemical processes." (Ill. Rev. Stat. 1945, ch. 48¹/₂, par. 33.)

The 1945 Act's definition of professional engineering remained unchanged until 1965, when the legislature amended the definition of professional engineering to read as follows:

"[A] profession in which a knowledge of the mathematical and natural sciences gained by study, experience and practice, is applied with judgment to the materials and forces of nature in the economical planning and design of engineering systems or devices for the benefit of mankind." Ill. Rev. Stat. 1965, ch. 48¹/₂, par. 33.

The 1945 Act's list of examples of professional engineering was also expanded by the 1965 amendment (see Ill. Rev. Stat. 1965, ch. 48¹/₂, par. 33) and was again expanded in 1969 (see Ill. Rev. Stat. 1969, ch. 48¹/₂, par. 33). However, the 1945 Act's basic definition of the practice of professional engineering remained unchanged after 1965. The 1945 Act, as amended, remained in effect until 1989, when the legislature repealed it and replaced it with the 1989 Act (Ill. Rev. Stat. 1989, ch. 111, par. 5201 *et seq.*). The 1989 Act defines professional engineering practice as:

"[T]he consultation on, conception, investigation, evaluation, planning, and design of, and selection of materials and methods to be used in, administration of construction contracts for, or site observation of an engineering system or facility, where such consultation, conception, investigation, evaluation, planning, design, selection, administration, or observation requires extensive knowledge of engineering laws, formulae, materials, practice, and construction methods. A person shall be construed to practice or offer to practice professional engineering, within the meaning and intent of this Act, who practices, or who, by verbal claim, sign, advertisement, letterhead, card, or any other way, is represented to be a professional engineer, or through the use of the initials 'P.E.' or the title 'engineer' or any of its derivations or some other

title implies licensure as a professional engineer, or holds himself out as able to perform any service which is recognized as professional engineering practice." (Ill. Rev. Stat. 1989, ch. 111, par. 5204(o).)

The 1989 Act listed all of the examples of professional engineering contained in the 1945 Act, and added the following examples:

"forensic engineering, subsurface investigations, energy analysis, environmental design, automated building management systems; or the provision of professional engineering site observation of the construction of works and engineering systems." Ill. Rev. Stat. 1989, ch. 111, par. 5204(o).

Having reviewed the above statutory provisions, we now turn to the question of whether plaintiff was required to be licensed as a professional engineer prior to the passage of the 1989 Act. The Department argues that the 1941 Act's definition of professional engineering, which included activities such as investigation and evaluation, was sufficiently broad to cover plaintiff's investigative engineering activities. However, the Department fails to note that the 1941 Act is of no relevance to the present case because the legislature repealed it and substituted the 1945 Act, which contains a much narrower definition of the practice of professional engineering. (See *In re Guardianship of Sodini* (1988), 172 Ill. App. 3d 1055, 1058 ("[w]hen a statute is repealed and a replacement statute is adopted, the effect is to completely obliterate the prior statute, and whatever is embraced in the new statute prevails, while whatever is excluded is to be discarded").) Because the 1945 Act was in effect when plaintiff began the practice of investigative engineering, it controls our determination of whether plaintiff was required to be licensed as a professional engineer prior to 1989.

In 1970, when plaintiff began his career as an investigative engineer, the 1945 Act, as amended, defined professional engineering practice as "the economical planning and design of engineering works, systems or devices for the benefit of mankind." (See Ill. Rev. Stat. 1969, ch. 48$^1$/$_2$, par. 33.) Plaintiff has never engaged in the planning or design of engineering systems. Instead, he has limited his activities to the evaluation and investigation of engineering systems. Nothing in the 1945 Act indicates the legislature intended it to cover individuals who merely investigate or evaluate engineering systems. Therefore, applying the plain meaning of the statutory language, the 1945 Act did not encompass investigative engineering as practiced by plaintiff, and, until its repeal, he was not required to be licensed as a professional engineer. See *Bubb v. Springfield School District 186* (1995), 167 Ill. 2d 372, 381 (language in statutes should be given its

plain and ordinary meaning); *Eagan v. Chicago Transit Authority* (1994), 158 Ill. 2d 527, 531-32 (same).

Our conclusion that investigative engineering, as practiced by plaintiff, did not fall within the purview of the 1945 Act does not end our inquiry, however. As indicated above, effective January 1, 1990, the legislature repealed the 1945 Act and replaced it with the 1989 Act. The 1989 Act revived the broad definition of the practice of professional engineering practice contained in the 1941 Act, including within its purview activities such as investigation and evaluation. Thus, while plaintiff's occupation fell outside the scope of the practice of professional engineering from 1970 to 1990, the 1989 Act's broad definition of professional engineering practice undoubtedly covers plaintiff.

We are thus presented with the core issue in the present case: whether, given that he was an investigative engineer for 20 years prior to the legislature's decision to bring investigative engineering within the definition of professional engineering, plaintiff has a due process or equal protection right to be "grandfathered" into the practice of professional engineering.

## I. Due Process

Plaintiff's due process claim is premised on the argument that, because he practiced investigative engineering for approximately 20 years prior to the passage of the 1989 Act, he acquired a vested right in the practice of that profession. Because he has acquired a vested right in the practice of investigative engineering, plaintiff reasons, due process mandates the application of a "grandfather clause" permitting him to continue his practice despite the fact that he does not meet the 1989 Act's requirements for licensure.

Black's Law Dictionary defines a grandfather clause as "[a]n exception to a restriction that allows all those already doing something to continue doing it even if they would be stopped by the new restriction." (Black's Law Dictionary 699 (6th ed. 1990).) In the context of the regulation of professions and occupations, a grandfather clause is a special provision made for the existing practitioner in a statute which regulates a profession for the first time. *Taylor v. Hayes* (1970), 131 Ill. App. 2d 305, 309, citing *State ex rel. Krausmann v. Streeter* (1948), 226 Minn. 458, 33 N.W.2d 56.

In addressing plaintiff's due process argument, we find guidance in the decision of *Taylor v. Hayes* (1970), 131 Ill. App. 2d 305. There, the plaintiff was a psychologist who began his practice in 1953. In 1963, the legislature passed the Psychologist Registration Act (Act) (Ill. Rev. Stat. 1963, ch. 91½, par. 401 *et seq.*), which was the State's

first attempt to license and regulate the practice of psychology. Shortly thereafter, the Department of Education and Registration (defendant) informed the plaintiff that he was in violation of the Act and would be arrested if he continued the unlicensed practice of psychology. The plaintiff, however, was not eligible for licensure under the Act because he held only a bachelor of arts degree in psychology, while the Act required that applicants for licensure possess at least a master's degree. Unable to legally continue to pursue his chosen profession, the plaintiff filed suit, seeking a declaration that the Act was unconstitutional as applied and an injunction compelling the defendant to grant him a license. The trial court found the Act unconstitutional as applied and granted the plaintiff's requested relief. The defendant appealed. *Taylor,* 131 Ill. App. 2d at 306-09.

The *Taylor* court framed the issue on appeal as being whether due process required that the Act include a grandfather clause permitting those already practicing psychology to seek licensure notwithstanding their inability to meet the Act's educational requirement. (131 Ill. App. 2d at 309.) The *Taylor* court held that the State's failure to provide such a grandfather clause constituted a denial of due process, stating:

> "When a profession is regulated for the first time, it may be assumed that those who have followed this profession in the community for a period of years have the qualifications for their work. [Citation.] In the instant case the right of the plaintiff to pursue his profession was fixed during the pre-regulatory period and any subsequent legislation affecting his profession must be reasonable as it affects his special situation. We find that the requirement that plaintiff, as a practicing psychologist at the time of the enactment of the Act, possess a master's or doctoral degree to qualify for registration is unreasonable and arbitrary and denies him due process of law since it effectively excludes him from continuing to practice without providing an alternative method for evaluating his ability." 131 Ill. App. 2d at 310-11.

Importantly, despite the *Taylor* court's conclusion that the plaintiff had a cognizable due process right in the continued practice of his profession, it reversed the trial court's order compelling the defendant to issue him a license. According to *Taylor*, due process did not require the defendant to issue the plaintiff a license; rather, it required only that the defendant provide an alternative means, such as an examination, by which the plaintiff could demonstrate his competence. (131 Ill. App. 2d at 311.) The *Taylor* court therefore ordered the defendant to conduct a specially designed examination to

determine whether the plaintiff's education and experience, considered together, rendered his level of competence equal to that of one possessing a master's or doctoral degree. (131 Ill. App. 2d at 311.) The *Taylor* court stated that if, after administering this examination, the defendant found the plaintiff's level of competence to be satisfactory, it should allow him to apply for licensure along with other applicants. If, on the other hand, the defendant found the plaintiff's professional competence wanting, he would have no grounds for complaint because he would have been accorded the "fair opportunity" to demonstrate his competence which due process required. *Taylor*, 131 Ill. App. 2d at 311.

Although the issue addressed in *Taylor* has not resurfaced in any subsequent reported decision in Illinois, courts in other jurisdictions have considered similar issues. For example, in *Berger v. Board of Psychologist Examiners* (D.C. Cir. 1975), 521 F.2d 1056, the United States Court of Appeals confronted a situation much like that in *Taylor*. At issue in *Berger* was a statute passed by Congress in 1971 which regulated the practice of psychology in the District of Columbia for the first time. This statute required, *inter alia*, that an applicant for a license to practice psychology possess a master's degree or doctorate in psychology. The plaintiff, a psychologist for 14 years prior to the passage of this new statute, applied for a license to practice psychology, but was rejected because he did not meet the statute's educational requirements. The plaintiff then filed an action seeking a declaration that the statute's failure to include a grandfather clause rendered it unconstitutional. After he was denied relief by a lower court, the plaintiff appealed. *Berger*, 521 F.2d at 1057-59.

The *Berger* court initially noted that the nature of the plaintiff's challenge to the statute was limited. The plaintiff did not attempt to argue that he had the absolute right to practice psychology. Instead, he maintained that individuals who were engaged in the practice of psychology before it was regulated could not be denied the right to continue to practice without being given "some occasion to demonstrate their adequacy to the task." (*Berger*, 521 F.2d at 1062.) Citing *Taylor*, the *Berger* court held that the statute violated the plaintiff's due process rights because it:

> "[F]ails to account for those competent psychologists who embarked upon their profession when no degree was required and who thus are denied *a fair opportunity* to come within the statute's licensing requirements." (Emphasis added.) *Berger*, 521 F.2d at 1063.

Thus, *Berger* adopted the rule announced in *Taylor*: where a profession is regulated for the first time, due process requires that

those who practiced that profession during the preregulatory period be given a fair opportunity to come within the statute's licensing requirements. (*Berger*, 521 F.2d at 1063; see also *Taylor*, 131 Ill. App. 2d at 311.) The court cautioned, however, that due process does not require the State to grant licensure to such individuals without examination, solely on the basis of their past experience. *Berger* stated: "The Illinois court [*Taylor*] declined, as we must, to compel its licensing board to grant the applicant licensure, but insisted that some method be devised to determine if the level of his professional skills warranted the granting of a license to him." *Berger*, 521 F.2d at 1063; see also *Abramson v. Gonzalez* (11th Cir. 1992), 949 F.2d 1567, 1580 (citing *Berger* for the proposition that where a State enacts new requirements for entry into a profession, due process requires that those already practicing be given a fair opportunity to meet the new requirements).

In applying *Taylor* and its progeny to the present case, we must recognize the limited nature of their holdings. *Taylor* rejected the argument, advanced by plaintiff in the present case, that due process requires the State to grant automatic licensure to existing practitioners when it regulates a profession for the first time. Instead, *Taylor* held that due process requires the State to give individuals who were practicing a profession before it was regulated a fair opportunity to comply with the newly imposed regulations. *Taylor* indicated that the fair opportunity standard would be satisfied by an examination designed to test whether the plaintiff's education and experience were substantially equivalent to the minimum statutory requirement of a master's degree in psychology. (See *Taylor*, 131 Ill. App. 2d at 311.) Thus, *Taylor* did not hold that due process forbids the State from requiring individuals who practiced a profession before it was regulated to take a professional competency examination. On the contrary, *Taylor* held that the State may not constitutionally *prevent* such individuals from taking a competency examination. *Taylor*, 131 Ill. App. 2d at 311.

■ Viewing the facts of the present case in light of *Taylor*, it is clear that the due process right recognized in that case is not implicated by the Department's actions. Unlike the plaintiff in *Taylor*, plaintiff here is fully qualified to apply for a license to practice professional engineering under the 1989 Act. As a graduate of a four-year engineering curriculum with more than four years' engineering work experience, plaintiff meets the educational and practical experience prerequisites to licensure. (See 225 ILCS 325/10(a), (b) (West 1994).) All that stands between plaintiff and a license to practice professional engineering is an eight-hour written examination in the

fundamentals of engineering and an eight-hour written examination in the principles and practice of engineering. (See 225 ILCS 325/ 10(a), (b) (West 1994).) Unlike the plaintiff in *Taylor*, plaintiff here is not prevented from practicing his profession by a statutory requirement he cannot hope to meet; rather, plaintiff seeks to avoid exactly the type of professional competency examination endorsed by *Taylor* and its progeny. Based on these cases, we conclude that due process does not exempt plaintiff from the requirements of the 1989 Act. 225 ILCS 325/1 *et seq.* (West 1994).

## II. Equal Protection

Having concluded that due process does not exempt plaintiff from the requirements of the 1989 Act, we may briefly dispose of his equal protection argument. This argument appears to rest upon the notion that there is no rational basis for requiring professional engineers to pass an examination in order to obtain a license because interior designers, nutritionists, water pump installers, wrestling promoters, and others are not required to pass a licensure examination. We find this argument unpersuasive.

The fourteenth amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., amend. XIV.) Similarly, the Illinois Constitution provides, "No person shall *** be denied the equal protection of the laws." (Ill. Const. 1970, art. I, § 2.) Our supreme court has held that the same standards govern claims brought under the Federal and Illinois equal protection provisions. *Nevitt v. Langfelder* (1993), 157 Ill. 2d 116, 124.

To determine whether a legislative classification violates the constitutional guarantee of equal protection, we must first determine the proper level of scrutiny to be applied to the challenged classification. (*People v. P.H.* (1991), 145 Ill. 2d 209, 229.) Where the classification does not affect a fundamental right or discriminate against a suspect class, the standard for judging its constitutionality is the rational basis test. (*City of New Orleans v. Dukes* (1976), 427 U.S. 297, 303, 49 L. Ed. 2d 511, 517, 96 S. Ct. 2513, 2516; *Cutinello v. Whitley* (1994), 161 Ill. 2d 409, 417.) Because the right to pursue a profession is not a fundamental right, legislation regulating professions and occupations is generally reviewed under the rational basis test. *Potts v. Illinois Department of Registration & Education* (1989), 128 Ill. 2d 322, 330; see also *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 792, 44 L. Ed. 2d 572, 588, 95 S. Ct. 2004, 2016 (holding that States have broad power to regulate the practice of professions).

The rational basis test requires only that the classification at is-

sue reasonably further a legitimate governmental interest. (*City of New Orleans*, 427 U.S. at 303, 49 L. Ed. 2d at 517, 96 S. Ct. at 2516-17; *P.H.*, 145 Ill. 2d at 229.) Under this test, the court presumes the classification is valid, and the plaintiff bears the burden of demonstrating that it furthers no legitimate public interest. (*Minnesota v. Clover Leaf Creamery Co.* (1981), 449 U.S. 456, 465-66, 66 L. Ed. 2d 659, 670, 101 S. Ct. 715, 724-25; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 371.) Whether a rational basis exists for a classification is a question of law reviewed *de novo*. *Cutinello*, 161 Ill. 2d at 417.

■ Viewed in light of the above standards, plaintiff's equal protection argument fails. Put simply, we believe the legislature could rationally draw a distinction between professional engineering and the occupations cited by plaintiff, such as interior design and wrestling promotion. (See *United States R.R. Retirement Board v. Fritz* (1980), 449 U.S. 166, 179, 66 L. Ed. 2d 368, 378-79, 101 S. Ct. 453, 461-62 (statute will be upheld against equal protection challenge if court can conceive any set of facts to justify classification); *Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265, 275 (same).) The legislature could rationally conclude that, because of the inherent complexity and potential effect upon public safety of professional engineering, practitioners in that field must demonstrate their expertise through an examination. (See *State v. Durham* (1963), 56 Del. 170, ___, 191 A.2d 646, 648 (describing engineering as a profession "which require[s] special skill, learning and experience" and noting that all 50 States, the District of Columbia, and Puerto Rico have laws requiring the licensure of professional engineers).) Conversely, the legislature could rationally conclude that interior designers, wrestling promoters, and others may obtain licenses without examination. Because there is nothing unreasonable about treating diverse occupations differently, we reject plaintiff's argument that the 1989 Act deprives him of the equal protection of the laws. See *Blumstein v. Clayton* (1985), 139 Ill. App. 3d 611, 614 (stating that in regulating professions, State may "deal with the different professions according to the needs of the public in relation to each").

For the reasons stated above, we reverse the judgment of the circuit court of McHenry County vacating the cease and desist order issued to plaintiff by the Department of Professional Regulation and order the cease and desist order reinstated.

Reversed.

GEIGER and COLWELL, JJ., concur.