Chester POTTER, Plaintiff,

v.

The **NEW JERSEY SUPREME COURT**
et al., Defendants.

**Civ. A. No. 75–23.**

United States District Court,
D. New Jersey.

Oct. 31, 1975.

------♦------

Stephen N. Dratch, Greenberg & Margolis, East Orange, N. J., for plaintiff.

Erminie L. Conley, Deputy Atty. Gen., Trenton, N.J., for defendants.

Before GIBBONS, Circuit Judge, and FISHER, and GERRY, District Judges.

CLARKSON S. FISHER, District Judge.

Plaintiff seeks declaratory and injunctive relief[1] against the operation of R. 1:24–2 of the New Jersey Court Rules, 1969, as amended, insofar as paragraph (c) of that Rule prevents him, and those persons similarly situated[2], from sitting for the bar examination of the State of New Jersey.[3]

R. 1:24–2 provides in pertinent part:

"No person shall be admitted to the bar examination unless he first presents to the Board [of Bar Examiners], in the manner prescribed by its rules:

(c) Certification by a duly authorized officer of his law school that it is approved by the American Bar Association and that it has awarded him a Bachelor of Laws degree or its equivalent."

All parties agree that the relevant and material facts upon which this law suit is based are not disputed, and are contained in a "Stipulation of Facts" filed on July 30, 1975, (hereinafter cited, Stip. p. ——). The matter is thus ready for summary disposition pursuant to Fed.R.Civ.P. 56.

Plaintiff first argues that he has been denied his right to Equal Protection of the Laws as guaranteed by the Fourteenth Amendment to the United States Constitution in that R. 1:24–2 results in an invidious discrimination against those persons who have graduated from law schools not approved by the American Bar Association who were qualified to sit for the New Jersey bar examination under New Jersey Court Rules which were in force prior to 1948 but who, since 1968, have been, with certain exceptions, refused permission to take the examination. See, Stip. pp. 1–11.

■ It is beyond serious question that a state may regulate an occupation which affects the public interest by setting qualifications reasonably related to competency. *Martin v. Walton, etc.*, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (lawyers); *Graves v. Minnesota*, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331 (1926) (dentists); *Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (physicians).

■ There is also an abundant body of authority upholding the requirement in various jurisdictions that candidates for admission to a state bar hold a law degree from an institution approved by the American Bar Association. *Lombardi v. Tauro*, 470 F.2d 798 (1st Cir.

---

1. Invocation of federal jurisdiction is pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. This Court was convened pursuant to 28 U.S.C. § 2281 and § 2284.

2. Although plaintiff alleges that he is a member of an aggrieved class of persons, there has been no attempt to convert this suit into a "Class Action". Fed.R.Civ.P. 23.

3. The Constitution of the State of New Jersey provides:

"The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. *The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted.*" (Emphasis supplied). N.J.Const. Art. 6, § 2, p. 3.

1972), *cert. den.*, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1972); *Hackin v. Lockwood,* 361 F.2d 499 (9 Cir. 1966), app. dism., *cert. den.*, 385 U.S. 960, 87 S.Ct. 396, 17 L.Ed.2d 305 (1966); *Rossiter v. Law Committee, etc. et al.,* Civil No. C–4767 (D.Colo. Aug. 26, 1975) (three-judge court); *Huffman v. Montana Supreme Court,* 372 F.Supp. 1175 (D.Mont.1974) (three-judge court), *aff'd.* 419 U.S. 955, 95 S.Ct. 216, 42 L. Ed.2d 172 (1974); *Shenfield v. Prather,* 387 F.Supp. 676 (N.D.Miss.1974) (three-judge court).

Plaintiffs attempt to distinguish the instant case from those cited above by pointing to the fact that Mr. Potter was once considered by the Supreme Court of New Jersey to be qualified to sit for the examination, that in all of the above cases the plaintiffs "assumed the risk" of being faced with a requirement of A. B.A. approval which they knew or should have known to exist when they matriculated at law school, and that R. 1:24–2(c) is not applied to those candidates permitted to take the examination under an experimental foreign attorney program. See Stip. pp. 11–16.

██ There being no "fundamental right" to practice law, *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Kotch v. Board of River Port Pilot Commissioners,* 330 U. S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); *Lombardi v. Tauro, supra* 470 F.2d at p. 800 (n. 4), nor any classification here based upon a "suspect criterion", *In re Griffiths,* 413 U.S. 717, 93 S. Ct. 2851, 37 L.Ed.2d 910 (1973)[4], R. 1:24–2(c) as applied in the context of the "foreign attorney" class, as opposed to the class of persons situated as is Mr. Potter, need be submitted only to the limited inquiry of whether there exists any "rational basis" for the distinction. *Schilb v. Keubel,* 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971).

The foreign attorney program was undertaken:

". . . in part to assist the large Spanish-speaking population in New Jersey who were being served by only a small number of Spanish-speaking attorneys as well as to give displaced attorneys an opportunity to participate in the profession in which they were trained." Stip. p. 12.

This court cannot say that the distinction drawn by the exception to the rule provided by the foreign attorney program is without a rational basis. The program is aimed at furtherance of a reasonable, legitimate goal, that is increased legal services to a heretofore inadequately served section of the community. While the method is not above criticism, it is certainly not a discrimination where there is not "any state of facts [which] reasonably may be conceived to justify it." *McGowan v. Md.,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). See also, *Brown v. Supreme Court of Va.,* 359 F.Supp. 549 (D.Va.1973) (three-judge court), *aff'd. sub nom. Titus v. Supreme Court of Virginia,* 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973), as another case where an "Equal Protection" challenge to a discriminatory bar admission practice failed.

Plaintiff's second argument is that he has been deprived of a "property" interest without benefit of Due Process of Law as guaranteed by the Fourteenth Amendment to the United States Constitution. in that R. 1:24–2 operates as a "conclusive presumption" against plaintiff preventing him from demonstrating his qualifications for admission to the bar examination.

It must first be noted that plaintiff was given nine opportunities to rebut the presumption now working against him, and all members of his "class" have

4. A requirement of United States citizenship was eliminated from R. 1:24–2 in 1973 following the *Griffiths* holding. The foreign attorney program is itself not a classification based on alienage but on several criteria relating to legal education outside the United States, etc. See Stip. pp. 11–16.

had, or will have, at least one such opportunity. Stip. pp. 3, 6–10.

The three-judge District Court in *Rossiter v. Law Committee, etc. et al., supra,* at p. 18 relied as follows to this same argument:

"The requirement embodied in Rule 208 created no presumption. The Colorado requirement of A.B.A. approval is a substantive standard which operates as a condition precedent to the acceptance of every class C application . . . . Were we to label these requirements as unconstitutional 'presumptions' we would strip the Colorado Supreme Court and the Board of Law Examiners of all authority to establish requirements for admission to the bar and abolish all semblance of objective criteria."

Cases such as *Willner v. Committee of Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), and *Schware v. Board of Bar Examiners, supra,* which appear to extend a requirement of procedural due process to the "bar candidate" situation are distinguishable from the instant case in that they concerned allegations of moral unfitness directed personally to individual candidates, while this case involves a challenge to the imposition of general prerequisites to admission.

This is *not* a case where a student, relying upon the acceptance by the Supreme Court of New Jersey of his law school, begins his studies there only to have that acceptance suddenly withdrawn and more stringent criteria retroactively applied. Rather, it is a case where updated standards were imposed after twenty years of "grace" and the application of an eminently fair "one last chance" provision. Stip. pp. 8–10.

■■■ Mr. Potter has not shown that the imposition of the A.B.A. approval requirement, or the exception to it provided by the foreign attorney program, has deprived him of an interest in "liberty" or that he had a "property" interest in continued permission to sit for the examination. See *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Nor has plaintiff raised a fact question similar to that raised by the non-tenured teacher in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), where there was an allegation that the teacher's interest in continued employment, though not secured by formal tenure, was nevertheless secured by words and conduct amounting to "unwritten 'common law' " providing a reasonable expectation of some form of job security. Here, plaintiff has stipulated:

"This application of a 'grandfather' clause to those applicants at no time constituted approval or accreditation under the new requirements of the former John Marshall Law School or any other nonaccredited (sic) law school which may have been attended by such applicants. It was, rather, a transitional stage in the court's administration of the admission of such applicants to the bar examination under the new admission requirements." Stip. p. 7.

The final constitutional basis upon which plaintiff relies is a contention that R. 1:24–2(c) represents an unconstitutional delegation of power by the Supreme Court of New Jersey, to the "wholly private" American Bar Association within the holdings of the *Scheeter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 537, 79 L.Ed. 1570 (1935), line of cases.

However, *Lombardi v. Tauro, supra,* 470 F.2d at p. 801 stated:

". . . there is no merit in appellant's argument that the promulgation of Rule 3:01(3)(b) constitutes the exercise of an illegally delegated legislative power by the judiciary. *The division of powers among the various branches of a state government does not present an issue of federal constitutional law. Highland Farms Dairy, Inc. v. Agnew,* 300 U.S. 608, 612, 57

**1040**

S.Ct. 549, 81 L.Ed. 835 (1937)."
(Emphasis supplied).

Moreover,

" 'It is a matter of common knowledge that the American Bar Association is a representative body composed of members of the bar from every part of the Union; an organization national in scope, whose purpose is to uphold and maintain the highest traditions of the legal profession'. *Rosenthal v. State Bar Examining Committee* . . . 116 Conn. 409, 165 A. 211 (1933); *accord Appl. of Schatz* . . . 80 Wash.2d 604, 497 P.2d 153 . . ." *Rossiter v. Law Committee etc. et al., supra* at pp. 14–15, (citing this language from *Rosenthal* approvingly.)

The fact that the Supreme Court of New Jersey has seen fit to adopt the standards of an approving body does not support a conclusion that such adoption is an abrogation or delegation of the power or duty to supervise the practice of law in this State pursuant to the mandate of the State Constitution.

■■■ Plaintiff's "estoppel" argument is pendant to the federal constitutional claims, so it is therefore within the court's discretion to refuse consideration. *Whitefield v. Ill. Board of Bar Examiners*, 504 F.2d 474, 479 (7 Cir. 1974). In any event, the enforcement of updated standards against plaintiff after a period of twenty years would not be an appropriate circumstance for the exercise of the equitable powers of this court.

For the above reasons, the complaint must be dismissed for failure to raise a substantial federal question.

Submit an order.