# IN THE MATTER OF HORST OERTEL, C.P.
## (MODERN LIMB AND BRACE CO.)

Superior Court of New Jersey
Appellate Division

Argued March 26, 1979—Decided April 24, 1979.

Before Judges Conford, Pressler and King.

*Mr. Stephen M. Offen* argued the cause for appellant Horst Oertel, C. P. ,(*Messrs. Schachter, Wohl, Cohn & Trombadore,* attorneys).

*Ms. Andrea M. Silkowitz,* Deputy Attorney General, argued the cause for respondents State of New Jersey, Department of Human Services, Division of Medical Assistance and Health Services, and Thomas M. Russo, Director (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Ms. Erminie L. Conley,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

Pressler, J. A. D. Appellant Horst Oertel appeals from a final determination of the Director of the Division of Medical Assistance and Health Services (Division) denying him status as an eligible Medicaid provider of orthotic services. The decision was based on *N. J. A. C.* 10:55–1.1 and 1.2, which condition provider eligibility of those furnishing prosthetic and orthotic services upon their certification by the American Board of Certification in Orthotics and prosthetics, Incorporated (ABC). Oertel has been certified by the ABC as a prosthetist but not as an orthotist.[1] He challenges the certification requirement essentially on the grounds, first, that it is *ultra vires* because it transcends the Division's rule-making power and, second, that even if it did not, the regulation must fail because it unconstitutionally delegates governmental authority to a private agency.

---

[1] *N. J. A. C.* 10:55–1.1 defines orthotic appliances as custom-made braces and prosthetic appliances as those which artificially replace a missing portion of the body.

■ We find the first of these contentions unpersuasive. Appellant's essentially syllogistic argument is that licensing of professions is an exclusively legislative function. The legislature has not seen fit to license either prosthetists or orthotists. The challenged regulation undertakes to impose a licensing requirement on these professionals. Therefore, the regulation is invalid. The obvious flaw in this reasoning is that the regulation is not a licensing requirement. The Division does not purport to affect the general practice of prosthetics and orthotics in this State. Its sole purpose is to insure that public funds will be paid to providers of such services only if the Division is assured, by application of an objective standard, of the qualifications of the providers and hence the quality of the services provided. We are of the view that if the objective standard is a reasonable one, the Division not only has the right but also the obligation to impose it.

■ The legislative purpose of the New Jersey Medical Assistance and Health Services Act (Medicaid), *N. J. S. A.* 30:4D-1 *et seq.,* as declared by *N. J. S. A.* 30:4D-2, is to enable persons within adequate resources therefor to secure "quality medical care." Implementation and administration of the programs and policies of the act have been delegated to the Division, among whose powers is the promulgation of rules and regulations designed, among other purposes, to secure maximum federal financial participation. *N. J. S. A.* 30:4D-5, 8. Federal participation is contingent upon the State providing safeguards to insure that care and services will be provided in "a manner consistent with * * * the best interests of the recipients," including "standards and methods * * * to assure that medical or remedial care and services provided to recipients of medical assistance are of high quality." 42 *U. S. C. A.* §§ 1396a(a)(19) and 1396a(a)(22) (D). Accordingly, *N. J. S. A.* 30:4D-7(o) authorizes the Division to exercise its rule-making power "[t]o assure that the nature and quality of the medical assistance provided for

under this act shall be uniform and equitable to all recipients."

Considering the foregoing, we have no doubt that, in view of the absence of any legislatively imposed standard or license for the practice of prosthetics and orthotics in this State, the Division itself would have been remiss in its obligations both to the program and to program recipients if it had failed to prescribe some reasonable standard of quality control for these services. The real difficulty posed by the regulation is whether the standard of ABC certification is reasonable. There is no doubt that it does constitute a delegation by a state agency to a private agency. But the fact of delegation alone does not automatically render it unreasonable or otherwise invalid. As our Supreme Court held in *Male v. Renda Contracting,* 64 *N. J.* 199, 201 .(1974), the test is "whether the particular delegation is reasonable under the circumstances considering the purpose and aim of the statute." Clearly, then, if the delegation to the ABC is reasonable, the standard of ABC certification is, as a matter of logical necessity, also reasonable. Our problem, however, is that we cannot on this record determine whether the delegation is or is not reasonable under all of the circumstances.

According to the record below, the Division has very little information regarding the ABC. All that is really known about it is that it is a private, nonprofit corporation headquartered in Washington, D. C. and established in 1948 as a joint effort of the American Academy of Orthopedic Surgeons and the American Orthotic and Prosthetic Association, with the avowed aim of advancing the "highest levels of competency and ethics" in these professions. What neither the Division nor we know, however, is what its standing is in the national medical community; what regard and reliability is accorded it by board-certified orthopedists and by medical specialists in the field of physical medicine and rehabilitation; how widespread nationally is the effect of its certification; whether its certification is intended to create an elite rather than a merely competent corps of professionals;

whether the certification itself is based on reasonable, fair, objective and uniformly applied criteria; whether the composition of the ABC is such as to suggest monopolistic protection for those already certified, by way of restrictions and limitations upon competition by other competent professionals, and whether there is any other feasible or professionally recognized alternative to judging professional competence.

In our view, these questions must be answered before we can be in a position to decide whether we are dealing here with an unexceptionable recognition and acceptance by a governmental agency of the expertise of a reputable professional body whose disinterested orientation is protection of the public welfare,[2] or with a situation dominated by either

---

[2]The Medicaid regulations are replete with eligibility requirements for various types of providers based on criteria adopted and implemented by non-governmental professional bodies. For example, general hospitals and most categories of special hospitals must not only be licensed by the appropriate state agency but also accredited by either the Joint Commission on Accreditation of Hospitals or the Committee on Hospitals of the American Osteopathic Association. *N. J. A. C.* 10:52–1.1 and 10:53–1.1. A qualified physical therapist is one who has graduated from a physical therapy curriculum approved by a specified professional association. *N. J. A. C.* 10:66–1.4. A qualified speech therapist is one certified or certifiable by the American Speech and Hearing Association and a qualified occupational therapist is one registered or registerable by the American Occupational Therapy Association. *N. J. A. C.* 10:66–1.5 and 1.6, respectively. A dental specialist is one who limits his practice to a specialty recognized by the American Dental Association and in states not certifying specialists, who is a diplomate of the appropriate American Dental Association recognized board. *N. J. A. C.* 10:56–1.1. Eligible podiatry care is care furnished in accordance with the standards of the American Podiatry Association. *N. J. A. C.* 10:57–1.2. And finally, an eligible ambulance service is one whose crew includes one person who has a certificate on completion of the advanced Red Cross first aid courses or equivalent. *N. J. A. C.* 10:50–1.2(1).

Moreover, the New Jersey Court Rules themselves recognize and adopt medical professional standards. Thus *R.* 4:74–7, in respect of involuntary civil commitments, defines "psychiatrist" as a physician either certified or eligible for certification by the American Board of Neurology and Psychiatry. *R.* 4:74–7(a).

undue elitism, self-interest or lack of professionalism in function or regard. Compare, *e. g.,* the delegations approved by *Ostroff v. New Jersey Supreme Court,* 415 *F. Supp.* 326 (D. N. J. 1976); *Potter v. New Jersey Supreme Court,* 403 *F. Supp.* 1036 (D. N. J. 1975), aff'd *o. b.* 546 *F.* 2d 418 (3 Cir. 1976), with those vitiated in *Group Health Ins. of N. J. v. Howell,* 40 *N. J.* 436 (1963), after remand 43 *N. J.* 104 (1964); *N. J. Dept. of Transp. v. Brzoska,* 139 *N. J. Super.* 510 (App. Div. 1976); *Costanzo v. N. J. Racing Comm'n,* 126 *N. J. Super.* 187 (App. Div. 1974); *Arabia v. Zisman,* 143 *N. J. Super.* 168 (Ch. Div. 1976), aff'd 157 *N. J. Super.* 335 (App. Div. 1978), certif. den. *sub nom. Arabia v. Atlantic City,* 78 *N. J.* 335 (1978). See also, Note, "The State Courts and Delegation of Public Authority to Private Groups," 67 *Harv. L. Rev.* 1398 (1954).

For the foregoing reasons we remand to the Division for further proceedings limited to a hearing on the nature, character, composition and reputation of the American Board of Certification in Orthotics and Prosthetics, Incorporated, as well as the possibility of alternative professional standards. Said hearing shall be on notice to appellant who shall have the right to participate fully therein. Upon completion thereof, which shall be within 90 days of the date hereof, the Division shall file supplementary findings of fact with respect to these issues, and the parties may file supplementary briefs in accordance with the ordinary time prescriptions of the appellate rules. Jurisdiction is retained.