**Joan M. DONAHUE, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF PSYCHOLOGY, Respondent.**

No. 88–132.

District of Columbia Court of Appeals.

Argued March 17, 1989.

Decided July 18, 1989.

---

Randell C. Ogg, with whom Michael F. Curtin, Washington, D.C., was on the brief, for petitioner.

Donna M. Murasky, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before ROGERS, Chief Judge, and MACK and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Petitioner Joan M. Donahue began and completed her doctoral degree in guidance and counseling at a time when the District of Columbia Code provided that a person with either a doctoral degree in a field "related to psychology" or a "doctoral degree in psychology" could become licensed to practice psychology in the District of Columbia. D.C.Code § 2–1704.6(2)(A) & (B) (1981). While fulfilling her two-year experience requirement the Council of the District of Columbia amended the Code to require that only a "doctoral degree in psychology" would satisfy the education requirement. D.C. Health Occupation Revision Act of 1985 (Revision Act), D.C.Code § 2–3305.4(o) (1988 Repl.). Petitioner appeals from the decision of the District of Columbia Board of Psychology denying her application for licensure because she did not have a degree in psychology. She contends that the Board's denial of her application was arbitrary and capricious, that its findings that she did not have a degree in psychology is unsupported by substantial evidence, and that the Board unconstitutionally delegated its rule-making authority to a private organization in defining a degree in psychology. She also contends that the Revision Act denies her due process and equal protection. We affirm because the Board's interpretation of the Revision

Act is consistent with the language of the statute and its legislative history and not otherwise arbitrary or capricious, and because petitioner's constitutional arguments are unpersuasive.

## I

In 1981 Joan M. Donahue was accepted by Catholic University as a doctoral candidate in the guidance and counseling program. When she received her degree on December 3, 1984, the D.C. Healing Arts Act provided that the education requirement for licensure as a psychologist was satisfied by either (a) a doctoral degree in psychology from an accredited university or college or (b) a doctoral degree from an accredited university or college in a field determined by the Board of Psychology (the Board) to be "related to psychology." D.C.Code § 2–1704.6(2)(A) & (B) (1981). However, while she was satisfying the District's two-year postgraduate experience requirement, *id.*, the Council of the District of Columbia enacted the District of Columbia Health Occupations Revision Act of 1985 (Revision Act), which became effective March 25, 1986. D.C.Code § 2–3301.1 *et seq.* (1988 Repl.).[1] Under the Revision Act a person could no longer become licensed as a psychologist on the basis of a doctoral degree in a field "related to psychology," but was required to have a "degree in psychology." D.C.Code § 2–3305.4(*o*). The Act included a "grandfather" provision for persons who were previously licensed, D.C.Code § 2–3301.4(b), but not for persons who had completed their doctoral degree requirement in a field "related to psychology."

In December 1986, having completed her two-year experience requirement, petitioner applied for licensure as a psychologist in the District of Columbia. The Board pro-

posed to deny her application for a license because she did not hold a doctoral degree in psychology. At a hearing before the Board, petitioner described the courses credited toward her doctoral degree, explaining why certain courses were within the field of psychology, and her attorney presented statutory and constitutional arguments which are renewed in this appeal. The Board denied her application for licensure on the ground that her "Ph.d. in Guidance and Counseling is not a doctoral degree in psychology."[2]

## II

Beginning in 1976 a number of bills were introduced in the Council of the District of Columbia to amend various licensing laws for the health care professions. Following Committee hearings, the District of Columbia Health Occupations Act of 1984 was introduced on September 25, 1984, at the request of the D.C. Law Revision Commission. COMMITTEE REPORT at 2, 5–6. A year later, the District of Columbia Health Occupations Revision Act was introduced, two days of hearings were held in October 1985, and that bill, with amendments, was passed. *Id.* at 6–7. As enacted, the Revision Act provided that a person applying for a license

shall establish to the satisfaction of the Board of Psychology that the individual has:

(1) Earned a doctoral degree in psychology from an accredited college or university; and

(2) Completed at least 2 years of postdoctoral experience acceptable to the Board.

D.C.Code § 2–3305.4(*o*)(1) & (2).

At the October 31, 1985, hearing on the proposed Revision Act, Dr. Isiah Zimmer-

---

1. The Revision Act carried forward the two year experience requirement clarifying, consistent with past practice, that the experience was to be postdoctoral and not simply post-graduate experience. D.C.Code § 2.3305.4(*o*) (1988 Repl.). REPORT OF THE DISTRICT OF COLUMBIA COUNCIL COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS ON BILL 6–317, DISTRICT OF COLUMBIA HEALTH OCCUPATIONS REVISION ACT OF 1985 (November 26, 1985) at 2, 5–6. (COMMITTEE REPORT).

2. The Board also found that petitioner could not be licensed on the basis of reciprocity because her Maryland license was issued pursuant to different standards. *See* D.C.Code § 2–3305.7. Petitioner had applied for and received her license to practice psychology in Maryland after fulfilling its one-year experience requirement and passing an examination administered by the American Association of State Psychology Boards.

man, chairman of the Board of Psychology, testified on behalf of the Board, past Board chairpersons and others, that a doctoral degree in a field "related to psychology" should no longer satisfy the educational requirement for licensure and the provision should be repealed.[3] He informed the Council Committee that only a "degree in psychology" should meet the educational requirement for licensure now that "the profession of psychology has developed to the point that it has a clearly defined educational and training curriculum and criteria by which programs are accredited." He explained that the opportunity to fulfill the educational requirement with a doctoral degree in a field "related to psychology" provided a "loop-hole through which partially or marginally trained people seek" licensure, and that "[t]o maintain adequate standards and to protect the consumer, this and previous Boards have had to spend an inordinate amount of time screening out such inappropriate applications."

The Revision Act does not define a "degree in psychology," but the Board has interpreted "degree in psychology" to require that:

    a.  The doctoral degree specify on its face that it is in psychology;

    b.  The Office of the Registrar of the educational institution certify directly to the Board that the degree is a degree in psychology; or

    c.  The degree program be listed in the edition of "Designated Doctoral Programs in Psychology," published annually by the American Association of State Psychology Boards and/or the Council for the National Register of Health Service Providers in Psychology, applicable to the year in which the degree was conferred.[4]

On appeal petitioner contends that the Board's finding that her degree is not one in psychology was arbitrary and capricious and is not supported by substantial evidence. She also contends that the Board unconstitutionally delegated its rule-making authority to private organizations to determine what constitutes a degree in psychology. Alternatively, she contends that the Revision Act is unconstitutional because, first, it violates her due process rights in that, by not including a grandfather clause, it unreasonably impacts on her protected interest as a potential licensee who had completed her doctoral studies in reliance on the prior statute; and second, that it violates her right to equal protection because it treats foreign trained psychologists differently without a rational basis by affording them hearings before the Board to establish on a case-by-case basis whether their degrees substantively constitute a degree in psychology.

### III

■ This court will defer to the Board's interpretation of a statute that it is charged with enforcing unless it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *Smith v. District of Columbia Dep't of Employment Servs.,* 548 A.2d 95, 97 (D.C. 1988); D.C.Code §§ 1–1510, 11–722 (1981). The interpretation is binding on the court unless it conflicts with the plain meaning of the statute or its legislative history. *Id.; see also Nova Univ. v. Educational Inst. Licensure Comm'n,* 483 A.2d 1172, 1190–91 (D.C.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985). We hold that the Board could reasonably define "degree in psychology" in a manner that did not require it to evaluate an applicant's individual courses but which relied on sources premised on well-defined standards accepted by the profession.

The plain meaning of "degree in psychology" does not require that the Board engage in a course-by-course review to determine whether an applicant's degree was

---

**3.** *District of Columbia Health Occupations Revision Act of 1985: Hearings on Bill 6–317 and Bill 6–30 Before the Committee on Consumer and Regulatory Affairs of the District of Columbia Council* (October 31, 1985) (*Committee Hearings*).

**4.** The Board set forth its interpretation of the statutory requirement for a "degree in psychology" in its decision of *In re William Harris, Ph.D.* (Oct. 2, 1987). Petitioner's attorney had a copy of that decision at the time of her hearing before the Board.

consistent with the definition of the "practice of psychology." [5] As the chairman of the Board suggested at petitioner's hearing, "a degree in psychology" and the "practice of psychology" are not necessarily the same. In adopting three alternative definitions of "degree in psychology" the Board interpreted the term in its plain and common sense meaning to mean a doctoral degree in psychology, and not a doctoral degree in a related field, and in providing two alternative means of demonstrating that a doctoral degree is in substance a degree in psychology, in a manner consistent with the development of the field of psychology itself.

The legislative history of the Revision Act clearly supports the Board's interpretation. Repeal of the provision that allowed a doctoral degree in a field "related to psychology" to fulfill the educational requirement for licensure appears to have been in direct response to the view expressed by Dr. Zimmerman that requiring a degree in psychology was in the public interest since there now was professional agreement about the curriculum for a degree in psychology and that accepting degrees in a field "related to psychology" encouraged some applications of marginal qualifications which required the Board to expend significant resources reviewing them on a degree-by-degree, course-by-course basis. Accordingly, it was not unreasonable for the Board to conclude that petitioner's contention, that it should engage in a course-by-course review to determine whether petitioner's degree was one in psychology, would require the Board to ignore the D.C. Council's decision that future licensees should have a degree in psychology premised on a well-established curriculum.

■ Requiring that a degree state on its face that it is a degree in psychology is clearly within the plain meaning of the statutory requirement of a "degree in psychology," and petitioner does not contend otherwise. The two alternative definitions adopted by the Board, while not as clearly a "plain meaning" interpretation, are nevertheless fully consistent with the statute and its legislative history. Permitting an applicant to demonstrate that he or she has a "degree in psychology" when "[t]he Office of the Registrar of the educational institution certif[ies] directly to the Board that the degree is a degree in psychology" avoids a wooden interpretation dependent on the organizational structure of a degree-granting institution and gives recognition to the substance of the learning in a field of study that now has well-established criteria accepted by the profession.[6] Similarly, if a degree is a "Designated Doctoral Program[] in Psychology," although not labeled on its face as a degree in psychology, according to the legislative history such a degree could only be so designated because the profession is operating within well-defined principles of what constitutes the curriculum for a psychology degree.[7]

5. The Revision Act defines the "practice of psychology" to mean:

> the application of established scientific methods and principles, including the principles of psychophysiology, learning, perception, motivation, emotions, organizational and social behaviors for the purpose of understanding, assessing, treating, explaining, predicting, preventing, or influencing behavior; the application of psychological methods and procedures for interviewing, counseling, psychotherapy, including behavior therapy, behavior modification, behavior medicine, or hypnotherapy; or the application of psychological methods or procedures for constructing, administering, or interpreting tests of intelligence, mental abilities and disorders, neuropsychological functioning, aptitudes, interests, attitudes, personality characteristics, emotions, or motivations.

D.C.Code § 2–3301.2(16)(A).

6. *See Berl v. Board of Psychologist Examiners,* 322 A.2d 274, 275–76 (D.C.1974) (criticizing the Board for giving "absolute deference to whether a particular [institution] labeled the ... degree as one in 'psychology,'" and requiring the Board to "look to the substance of the course for which credit is sought and not the arbitrary happenstance of how the university organized its academic departments").

7. Petitioner has failed to demonstrate that the Board unconstitutionally delegated to private organizations its rule-making authority to determine what constitutes a degree in psychology. Her bald assertion that this is an impermissible delegation is insufficient to prove that these organizations lack standards consistent with the Revision Act or apply their standards other than

Petitioner's reliance on *Berl v. Board of Psychologist Examiners, supra* note 6, 322 A.2d 274, is misplaced. Although there is language in the opinion supportive of petitioner's claim that reliance on the mere name of a degree or on the academic organization of an accredited institution might work a hardship on applicants, it must be read in the historical context of the development of the profession of psychology. The rationale of *Berl* which supported its holding back in 1974 is inapplicable now that the study of psychology is no longer one in which the students and institutions are unable "to anticipate a future need for treating psychology as a separate field of study," *id.* at 275, but has "developed to the point that it has a clearly defined educational and training curriculum and criteria by which programs are accredited." *Committee Hearings, supra,* note 3. Accordingly, we hold that the Board's decision to deny petitioner's application was not arbitrary or capricious.[8]

■ Petitioner's contention that the Board decision is not supported by substantial evidence is meritless. *See United Unions, Inc. v. District of Columbia Bd. of Zoning Adjustment,* 554 A.2d 313 (D.C. 1989) (standard of review of agency action). Petitioner does not dispute that her degree is not labeled as one in psychology on its

face and her official transcript states her degree is in guidance and counseling. She also does not dispute the Board's finding that her degree is not listed in the relevant edition of "Designated Doctoral Programs in Psychology." Moreover, petitioner did not seek to have her degree certified as one in psychology, presumably because Catholic University has a separate degree program in psychology.[9]

■ Petitioner's due process claim also fails. Essentially, petitioner contends that because she received her doctorate at a time when District of Columbia law provided that applicants for licensure as psychologists could fulfill the education requirement with a degree in a field "related to psychology," she had a constitutionally protected interest in obtaining a license as a psychologist that the Revision Act was required to protect. To the extent she relies on the grandfather provisions of prior licensing laws in the District of Columbia, her reliance is misplaced since those provisions protected only persons who had been lawfully engaged in the District of Columbia in the practice of the profession before the statutory requirements were changed. The Revision Act includes a grandfather provision only for persons previously engaged in the practice of psychology prior to

in a uniform manner. *See, e.g., Potter v. New Jersey Supreme Court,* 403 F.Supp. 1036, 1040 (D.N.J.1975), aff'd, 546 F.2d 418 (3d Cir.1976); *Rossitor v. Law Comm.,* C–4767 (D.Colo. Aug. 26, 1975). Nothing she claims rebuts Dr. Zimmerman's testimony that there are "clearly defined educational and training curriculum and criteria by which programs are accredited." That the Board chose to rely on the determinations of accredited institutions and professional associations as to whether an applicant's degree was a "degree in psychology" seems a reasonable way for the Board to proceed in order to avoid problems that existed under the prior statute.

**8.** That prior Boards found that applicants with petitioner's degree in guidance and counseling fulfilled the education requirement as a degree in a field "related to psychology" under the Healing Arts Act does not demonstrate that denial of petitioner's license under the Revision Act was arbitrary or capricious. *Cf. Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174

(D.Nev.1980) (waivers of compliance with admission requirements arbitrarily granted and denied). In denying petitioner's application pursuant to the Revision Act, the Board was responding to the maturing of the profession that now has uniform educational requirements.

**9.** The government has conceded for purposes of this appeal that petitioner has standing to challenge the Board's interpretation of the Revision Act even though she declined to request Catholic University to certify that she had a degree in psychology and did not offer evidence that the accrediting associations included in the Board's definition of a "degree in psychology" had not listed her degree in guidance and counseling as a degree in psychology. In view of Dr. Zimmerman's testimony that the field of psychology has developed to the point where there is a settled curriculum, and the Board's finding that her degree was not listed, we assume for purposes of this appeal that petitioner's degree would not be certified and is not listed.

its effective date;[10] neither it nor anything in the legislative history suggests that the D.C. Council intended to except from the requirement that new licensees have a degree in psychology a person who has completed a doctorate in reliance on the provisions of law in existence at the time that person began and completed the degree requirements.

■ Moreover, we have found no case, and petitioner has cited none, which finds a constitutionally protected right of the nature she alleges.[11] *Berger v. Board of Psychologist Examiners*, 172 U.S.App.D.C. 396, 521 F.2d 1056 (1975), on which petitioner relies, in fact, undermines her claim. In *Berger*, the court reversed the denial of an application for licensure under the District of Columbia Practice of Psychology Act, which imposed new minimum educational requirements for the licensure of psychologists and did not include a grandfather provision for persons previously practicing psychology in the District of Columbia. The court held that the Board's failure to provide a means by which Berger, who had been practicing for fourteen years before the educational requirements were enacted, could demonstrate his competency to be licensed as a psychologist created an irrebuttable statutory presumption that denied Berger "his constitutionally recognized interest in the practice of psychology in violation of the Due Process Clause of the Fifth Amendment." *Id.* at 403, 521 F.2d at 1063. The court recognized, however, that future applicants would not have such a recognized interest:

> Here the irrebuttable presumption of professional incompetence absent a graduate degree is not invalid with respect to future psychologists, but only with re-

spect to current practitioners who have no meaningful grandfather rights. * * * Certainly a graduate degree may be required of a practicing psychologist, just as it is required of doctors and lawyers. The inequity of the statute is that it fails to account for those competent psychologists who embarked upon their profession when no degree was required and who thus are denied a fair opportunity to come within the statute's licensing requirements at this point.

*Id.; see also Taylor v. Hayes*, 131 Ill. App.2d 305, 311, 264 N.E.2d 814, 818 (1970).

The distinction recognized by *Berger* between practitioners and prospective applicants remains reasonable. *See District of Columbia v. Douglass*, 452 A.2d 329, 331 (D.C.1982) (right to follow a chosen profession is protected only against unreasonable governmental interference); *see also Rohrlack v. Goff*, 197 F.Supp. 670, 672 (D.D.C.1961) (citation omitted) (due process only prevents such retroactive legislation as is unreasonable). The interest of practitioners in the right to continue practicing their profession is more compelling than the interest of future applicants who have only an expectation of practice. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Also, as indicated in *Berger*, persons who are already practicing have presumably acquired the skills of a competent psychologist and should have an opportunity to demonstrate their competency, especially where, when *Berger* was decided, the study of psychology was not an established discipline. *Berger, supra*, 172 U.S.App.D.C. at 401; 521 F.2d at 1061. In contrast, the application of educational requirements to prospective applicants who have not yet

10. Other exemptions from licensure of the practice of psychology under the Revision Act relate to circumstances not relevant here. *See* D.C. Code § 2–3305.2.

11. From the fact that the Revision Act allows foreign trained applicants to prove that their degrees are "substantially equivalent" to a degree in psychology, D.C.Code § 2–3305.3(b), it does not follow, as petitioner contends, that her equal protection rights have been violated. The D.C. Council could reasonably conclude that

foreign trained applicants would face different obstacles than a person trained in the United States where there is professional agreement about the requirements for course curricula and there are universities with psychology degree-granting departments. *See Potter v. New Jersey Supreme Court, supra* note 7, 403 F.Supp. at 1038. The Board has not interpreted that provision of the Revision Act, so petitioner cannot show that its application violates her right to equal protection.

acquired professional skills from practice at a time when the profession has developed a recognized formal program of study is demonstrably a rational means to achieve the legislative purpose of protecting the "public health, safety, and welfare" from "the practice of psychology by unqualified persons."

■ The only remaining question, therefore, is whether, as a matter of statutory construction, it would be manifestly unjust to apply the Revision Act to petitioner. *See Strand v. Frenkel*, 500 A.2d 1368, 1372 (D.C.1985). The answer depends on the nature of the affected parties, their rights, and the impact of the Revision Act on their rights. In *Scholtz Partnership v. District of Columbia Rental Accommodations Comm'n*, 427 A.2d 905 (D.C.1981), the court acknowledged that "[t]he people are entitled to protection from the fluctuating policy of the legislature," *id.* at 914 (citing THE FEDERALIST No. 44 (J. Madison)), but recognized that "[a]ll laws, when enacted, retroactively impair expectations; the real issue is a matter of the degree of the impairment and whether the expectation is one of right." *Id.* at 913. *See also Bradley v. Richmond School Bd.*, 416 U.S. 696, 717, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (1974). In describing when a right has matured or become unconditional, the court noted that the caselaw refers to four ways: the existence of a savings clause, by final judgment, by statutory right, and by ownership of property. *Scholtz, supra*, 427 A.2d at 915. In light of these considerations we find no basis on which to conclude that application of the Revision Act to petitioner constitutes manifest injustice.

The Board exercises a governmental duty to protect the public from unqualified psychologists through licensure and regulation of the profession for the benefit of the public generally. Although, in the course thereof, the Board may adversely affect some individuals, the Revision Act affects more than the individual rights of two private parties with respect to each other. *See id.; cf. United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). Petitioner, as one who seeks to pursue a livelihood in a regulated field, is bound to anticipate that the legislature may modify the regulations in the public interest. *See Scholtz, supra*, 427 A.2d at 915.

Petitioner has no basis on which to claim her rights have matured or become unconditional. The savings clauses in the Revision Act do not include prospective applicants. Petitioner does not have a final judgment on which to base a claim to entitlement to licensure. Nor can she claim a vested property right; the field in which she seeks licensure has rapidly matured in recent years and been subject to increasing regulation in order to protect the public and she had, at most, a unilateral expectation that the Council would not alter the requirements for licensure as a psychologist. *See Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709. She can demonstrate no unconditional statutory right that the Board failed to fulfill since she had not satisfied the post-doctoral experience requirement or applied for licensure before the Revision Act became effective. *See Scholtz, supra*, 427 A.2d at 917.

Finally, petitioner's reliance interest is not of sufficient magnitude to warrant protection against application of the "unfair impact" of the Revision Act. *Id.* at 918. It is undisputed that petitioner entered the guidance and counseling doctoral program at Catholic University because she wanted to be a psychologist, and that it was not until after she had received her doctorate and had embarked upon her post-doctoral experience requirement that Dr. Zimmerman told the D.C. Council that licensees should be required to have a degree in psychology and that the provision permitting licensure on the basis of a degree in a field "related to psychology" should be repealed. While we are not unsympathetic to petitioner's situation when she applied for licensure in the District of Columbia, we find no basis on which to conclude that she had been denied any right on which she was entitled to rely.

The proposal to amend the law for licensure in the healing arts was not a sudden event. *See Potter v. New Jersey Supreme*

*Court, supra* note 7, 403 F.Supp. at 1039 (new requirement of law degree from accredited law school). Not only was the matter subject to a study by a special civil task force of the Law Revision Commission, but the D.C. Council held public hearings and representatives of the psychology profession were represented. Petitioner has not suggested that she was unaware of the development of the field of psychology as a discrete curriculum with special requirements. At the time petitioner decided to pursue her doctorate at Catholic University that school had a department of psychology.

Petitioner's testimony before the Board makes clear that she decided not to seek a degree in psychology because she preferred to counsel persons suffering from normal, every day type of stress rather than the more seriously disturbed who were the object of clinical psychological training. Of course, that was her choice. But the D.C. Council was not thereby prohibited from changing the requirements for licensure of psychologists without also permitting those with a doctoral degree in "a related field" from qualifying for licensure. As the court noted in *Scholtz*, "[t]he continued existence of local government would be of no value if mere expectations were permitted to disarm it of power." 427 A.2d at 918. The D.C. Council's decision to limit future licensees to persons with a degree in psychology is not unrelated to its purpose to protect the public, the evidence before the Council providing it with good reason to conclude that such a limitation would best serve the public and avoid the difficulties that would be encountered by the Board in determining whether a degree "related to psychology" met the requirements for the curriculum of a doctoral degree in psychology.[12]

12. In *Berger, supra,* the court recognized the appropriateness of considerations of administrative efficiency in licensing even in the face of concerns about violations of procedural due process through the use of unjustifiable presumptions. 172 U.S.App.D.C. at 402, 521 F.2d at 1062; *see also Vlandis v. Kline,* 412 U.S. 441, 451, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1974).

13. Catholic University's program catalogue states that petitioner's degree in guidance and

In addition, given petitioner's particular professional interests there appears to be no barrier, as the chairman of the Board stated during the hearing, to pursuing her preferred counseling work in the District of Columbia without a license to practice psychology. *See* D.C.Code § 2–3301.3(d) (1988 Repl.). Nor is she prevented from qualifying for licensure as a psychologist; she can still request that she receive credit for the courses she had completed toward a degree in psychology.[13] She simply is unable to assert rights which would prevent the D.C. Council from changing the education requirement for a person not previously lawfully practicing as a psychologist in the District of Columbia.

Accordingly, the order of the Board denying petitioner's application for licensure as a psychologist is affirmed.

counseling rests on the twin academic bases of education and psychology, and prepares people to work in both areas of educational counseling and mental health counseling. To fulfill the degree requirements of her doctorate program, petitioner completed over 33 hours of course work offered by the Department of Psychology at Catholic University and over 57 hours of course work in the School of Education.