**Reginald F. TINNER, M.D., Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Respondent.**

No. 96–AA–1017.

District of Columbia Court of Appeals.

Argued Oct. 29, 1997.
Decided Dec. 11, 1997.

Walter G. Birkel, Washington, DC, for Petitioner.

Martin B. White, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for Respondent.

Before SCHWELB and KING, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Petitioner, Reginald Tinner, M.D., seeks review of a 1996 order of the District of Columbia Board of Medicine ("Board") denying, for the second time, his 1990 application to practice medicine in the District of Columbia. The Board's denial of Dr. Tinner's application followed a hearing ordered by this court, which had remanded the Board's initial denial of Dr. Tinner's application "for further consideration and explanation of the apparent different treatment of pre–1985 and post–1985 FLEX examinees by requiring a

'single sitting' for pre–1985 examinees." [1] *Tinner v. District of Columbia Dep't of Consumer and Regulatory Affairs,* No. 93–AA–1014, at 2 (D.C. June 27, 1995) (order remanding) (*"Tinner I "*). We affirm.

**I.**

Dr. Tinner sat for the FLEX national licensing examination on three separate occasions after completing medical school abroad. In December of 1975, he received scores of 65 in basic science, 72.5 in clinical science, and 69.1 in clinical competence, for a weighted average of 69.6.[2] In June of 1976, Dr. Tinner sat for the New Hampshire FLEX, and received scores of 70 in basic science, 77.3 in clinical science, and 67.3 in clinical competence, resulting in a weighted average score of 71.1. Thereafter, in December of 1976, Dr. Tinner again sat for the New Hampshire FLEX, taking only the Day I, basic science, and Day III, clinical competence sections of the examination and receiving scores of 70.3 and 81.2 on the respective sections. Under New Hampshire regulations, Dr. Tinner was not required to sit for the Day II, clinical science, portion of the examination since he had previously received in it a grade in excess of 75 on the June, 1976, examination. By combining the June, 1976, clinical science score with the December, 1976, basic science and clinical competence scores, New Hampshire calculated a passing weighted average score of 78.08, and granted Dr. Tinner a license.

Dr. Tinner was subsequently licensed to practice medicine in the state of New York in 1977, New Jersey in 1979, and Maryland in 1991. He began a family practice in Atlantic City, New Jersey, in 1979 and eventually submitted an application for licensure in the District which came before the Board on December 4, 1991. He based his application upon his having passed the FLEX as administered in the state of New Hampshire in 1976. By order dated July 14, 1993, the Board denied Dr. Tinner's application be-

---

1. Since 1979, the Federation Licensing Examination ("FLEX"), developed by the Federation of State Medical Boards, has been used by virtually all American jurisdictions.

2. The record is unclear as to the jurisdiction in which Dr. Tinner sat for this first FLEX. This, however, does not affect the disposition of this case.

cause he failed to meet the "single sitting" requirement for pre–1985 FLEX applicants. Dr. Tinner petitioned this court for review.

Upon reviewing the Board's decision, this court concluded initially that the Board's decision revealed "no meaningful or thoughtful explanation or rationale for why there is a 'single sitting' requirement for pre–1985 FLEX applicants and not for post–1985 FLEX applicants." *Tinner I, supra,* No. 93–AA–1014, at 1. The court, therefore, remanded the case for further consideration and explanation of the disparate treatment between the two groups of applicants.

## II.

On remand, the Board supplemented the record with additional documentation concerning the differing treatment given pre–1985 as contrasted with post–1985 FLEX examinees, and again denied Dr. Tinner licensure in the District. We will summarize the Board's additional documentation.

### A. FLEX Handbook

The Board provided information from the *Purpose, Procedure and Policy of the Federation Licensing Examination* ("FLEX Handbook") publication produced by the Federation for Boards of Medical Examiners.[3] In the "Policy" section of the FLEX Handbook, the Federation noted that the only way a FLEX weighted average ("FWA") will be computed is by averaging the scores of Day I, II, and III of the same examination; otherwise, a FWA will not be computed. In the event of reexamination, no FWA could be computed by the Federation unless the applicant took a total reexamination of all three days. FLEX HANDBOOK, *supra,* n. 3, at 9, 10. The Flex Handbook further provided that:

A pick-and-choose mechanism (scrambling) across multiple examinations utilizing only the highest grades, whether re-examined or otherwise, and whether by the same or different states, is admittedly a prerogative of the individual state medical board but can result in serious endorsement diffi-

culties on the part of the licentiate. The FLEX Board, therefore, urges that if such a procedure be practiced by an individual state board, a clear statement to the individual be made pointing out that the license so received may well be non-endorsible [sic], thus avoiding undue hardship upon the individual through no fault of his own. The FLEX Board strongly recommends **against** this type of procedure.

*Id.* at 10 (emphasis in original).

### B. Article by Dr. Lloyd R. Evans

In addition, the Board included in the record a 1976 article written by Dr. Lloyd R. Evans, former chair of the FLEX Clinical Sciences Committee. In this article, entitled "Flex Examination Problems," Dr. Evans discussed some of the difficulties that arose from the FLEX framework, one recurring problem being the mixing (i.e., scrambling) of grades from different examinations to achieve a passing score on the FLEX. *See* Lloyd R. Evans, M.D., *FLEX Examination Problems,* FEDERATION BULLETIN, June 1976, 166, 173–75. Dr. Evans further noted that the policy of the FLEX Board and Test Committee was that scores from different examinations not be scrambled to achieve a passing score. *Id.* at 174–75. The rationales he identified were the prevention of possible confusion on the part of the licensee and the maintenance of the integrity "of the licensure laws which are for the protection of the patient." *Id.* at 175.

### C. The New FLEX Program

Also provided in the record is documentation concerning the current FLEX examination, which was introduced in June of 1985. The document explained various ways in which the current FLEX (i.e., post–1985 FLEX) differed from the pre–1985 FLEX, a most notable difference being that the current FLEX consists of two components as contrasted with the three subject areas characteristic of the pre–1985 FLEX. *See* FEDERATION OF STATE MEDICAL BOARDS, NEW FLEX PROGRAM (1984). Additionally, the two com-

---

**3.** *Purpose, Procedure and Policy of the Federation Licensing Examination,* is the new title of what was formerly known as the *FLEX Handbook* until 1980. *See* FLEX BOARD OF THE FEDERATION OF STATE

MEDICAL BOARDS OF THE U.S., INC., PURPOSE, PROCEDURE AND POLICY OF THE FEDERATION LICENSING EXAMINATION PREPARED FOR BOARDS OF MEDICAL EXAMINATIONS (4th ed.1980).

ponents comprising the post–1985 FLEX were designed in such a way that each component is graded separately and a passing score has to be obtained for each component. *Id.* at 8. The component scores are no longer combined to compute a weighted average score.[4]

### D. The 1995–96 *Exchange*

Lastly, the Board supplemented the record with a publication by the Federation entitled *Exchange*. Provided in *Exchange* is information indicating that thirty-one jurisdictions, including the District, follow the Federation's recommendation regarding the pre–1985 FLEX. *See* FEDERATION OF STATE MEDICAL BOARDS OF THE U.S., INC., EXCHANGE 66–67 (1995–96) (table indicating requirements for licensure by endorsement). Thus, thirty-one jurisdictions mandate that an applicant who seeks licensure based on his pre–1985 FLEX score have passed the FLEX in a single sitting, while nineteen have no such single-sitting requirement. *Id.*[5]

### III.

■ Our review of the Board's action is deferential. The Board's "interpretation of a statute it is charged with administering 'is binding on th[is] court unless it conflicts with the plain meaning of the statute or its legislative history.'" *Roberts v. District of Columbia Bd. of Medicine,* 577 A.2d 319, 326 (D.C. 1990) (citation omitted) (quoting *Donahue v. District of Columbia Bd. of Psychology,* 562 A.2d 116 (D.C.1989)). Moreover, as the reviewing court, we should defer to any reasonable construction of the statute by the agency. *See Joseph v. District of Columbia Bd. of Medicine,* 587 A.2d 1085, 1088 (D.C.1991); *Superior Beverages v. District of Columbia Alcoholic Beverage Control Bd.,* 567 A.2d 1319, 1325 (D.C.1989).

Guided by this principle of deference, we turn now to Dr. Tinner's contentions.

### IV.

### A. Dr. Tinner's Qualifications

■ Dr. Tinner first contends that the Board erred by not assessing his individual qualifications and instead relying solely on the single sitting requirement of the pre–1985 FLEX. In doing so, he argues, the Board arbitrarily denied licensure to a candidate whose qualifications are superior to other candidates admitted under qualifying state-constructed examinations such as the applicant in *Roberts, supra.* Dr. Tinner asserts that the Board thus created an impermissible distinction between applicants submitting applications based on FLEX examinations and those submitting applications based on state-constructed examinations.

Dr. Tinner's argument fails for two reasons. First, while his approximately twenty years of practice and apparently flawless record suggest that he is a competent physician, "[w]e cannot say, as Dr. [Tinner] would, that the [Board's] judgment is irrational merely because [his] experience is long and [his] achievements many." *Roberts, supra,* 577 A.2d at 326. D.C.Code § 2–3305 (1994 Repl.) conveys the legislature's intent that, notwithstanding current licensure and good standing in another state or territory, the relevant considerations for a license by waiver of examination or "endorsement and reciprocity are circumstances at the time of original licensure and not intervening experience or accomplishment—perhaps because the latter, as an objective measurement of qualifications, are too difficult to assess." *Id.* We deferred in *Roberts* to the Board's decision to adopt a bright-line requirement of a passing grade of 75 for applicants relying on out-of-

---

4. 17 DCMR § 4605.8 (1990) provides:
    An applicant who is relying on the FLEX examination administered in another jurisdiction as a qualifying examination shall receive under sitting requirements identical to applicants taking the examination in the District a passing score of the following:
    (a) A FLEX weighted average of seventy-five (75) if the examination was taken prior to January 1, 1985; or

(b) A FLEX seventy-five (75) on both components of the examination if the examination was taken after January 1, 1985.

5. According to the *Exchange,* one state, Arkansas, does not recognize the pre–1985 FLEX. *See* EXCHANGE, *supra,* at 66–67.

state FLEX exams. *Roberts, supra,* at 325, 327. Similarly, we see no reason why we should not defer to the Board's decision to adopt a bright-line requirement of a single sitting for pre–1985 FLEX examinees. Such a requirement is consistent with D.C.Code § 2–3305 in that it falls within the Board's discretion to establish standards for FLEX examinees from other states substantially equivalent to standards required of District of Columbia FLEX examinees.[6]

Secondly, Dr. Tinner's attempt to draw a comparison between applicants who sat for the FLEX and those who sat for state-constructed examinations would call for discussion outside the scope of this case. As indicated in *Tinner I,* our task is to assess whether the Board can proffer a satisfactory explanation for requiring applicants seeking licensure in the District based on a pre–1985 FLEX to meet a single sitting requirement while not demanding the same of applicants applying on the basis of a post–1985 FLEX.

■ Even if the Board makes decisions about different applicants that appear inconsistent and suggest different treatment, we are obliged to defer to its decision as long as the Board explains the arguably different treatment, and its decision is consistent with the mandates of the Act.[7]

### B. The Single Sitting Requirement

■ Dr. Tinner also contends that the Federation did not endorse a single sitting requirement; rather, it only recommended a

minimum passing grade of 75. To support this argument, Dr. Tinner notes that nineteen (19) jurisdictions, including those with the largest physician populations, do not have a single sitting requirement.

We agree that the Federation recommended a minimum passing grade of 75.[8] We cannot agree, however, with Dr. Tinner's assertion that the Federation did not endorse a single sitting requirement. While the FLEX Handbook did not say in so many words that the Federation was recommending a single sitting requirement, it provided discussion which compellingly indicated that the Federation endorsed such a requirement. Specifically, as indicated above, the Federation recommended a passing Flex weighted average (FWA) of 75. Further, the Federation stated that it would calculate an FWA only on the basis of an examinee's scores achieved in all three days of the same examination, whether it is the initial examination or a subsequent reexamination. In addition, the Federation expressed its strong recommendation against picking and choosing across multiple examinations, using only the highest scores, because such scores may not be endorsible in other jurisdictions. The fact that the Federation recommended a minimum passing FWA score of 75, computed the FWA based on a single sitting, and recommended against scrambling was tantamount to its endorsement of a single sitting requirement for the pre–1985 FLEX.

Finally on this point, we cannot agree that the fact that nineteen (19) jurisdictions,

---

**6.** The applicable statutory provisions authorize the Board to waive the examination requirements in its discretion,

> for any applicant who otherwise qualifies for licensure and who is currently licensed or certified under the laws of a state or territory of the United States with standards which, in the opinion of the board, were substantially equivalent at the date of the licensure or certification to the requirements of this chapter.... Section 2–3305.6(e)(1). Similarly, a Board, in its discretion, may issue a license by "reciprocity" or "endorsement" to an applicant "[w]ho is licensed or certified and in good standing under the laws of another state with requirements which, in the opinion of the board, were substantially equivalent at the time of licensure to the requirements of this chapter...." Section 2–3305.7(1).

**7.** In *Roberts, supra,* Dr. Roberts, the petitioner, argued that the Board's interpretation of the "substantially equivalent" requirement, governing application for license by reciprocity or endorsement, to require strict conformity with the District's minimum passing score of seventy-five (75) on the FLEX was impermissible. We found, to the contrary, that the Board's insistence on "strict equivalency" under the circumstances did not exceed its statutory authority under §§ 2–3305.6(e) and 2–3305.7.

Likewise, requiring the strict conformity of the single sitting requirement for pre–1985 FLEX examinees in this instant case does not exceed the Board's statutory authority if it can proffer sufficient justification for it.

**8.** See the Scoring and FLEX Weighted Average section of the FLEX Handbook.

including some with the largest physician populations, do not have a single sitting requirement substantially advances Dr. Tinner's opposition to this requirement. If anything, this aspect of the case actually weakens Dr. Tinner's position since a majority of jurisdictions, thirty-one, do have the single sitting requirement for applicants who seek licensure based on the pre–1985 FLEX. It is reasonable to conclude that the majority of jurisdictions read the FLEX Handbook the way the District did, and administered the FLEX accordingly.

In 17 DCMR § 4605.2 the District of Columbia adopted the single sitting requirement for applications based on a pre–1985 FLEX exam in order to implement the underlying statute, D.C.Code § 2–3305 (1994). We are not persuaded that the Board's corresponding interpretation and application of the statute are unreasonable.

## C. Scrambling

■ Lastly, Dr. Tinner argues that he does not actually seek scrambling of his scores, principally because the New Hampshire FLEX scores he relies upon were achieved in two examinations taken within a six-month period.

Scrambling involves substituting higher scores from a re-examination for scores on a previously taken examination. This is precisely the action engaged in by New Hampshire when it used Dr. Tinner's December, 1976, basic science score of 70.3 and clinical competence score of 81.2 to replace his June, 1976, scores of 70 and 67.3 respectively. We cannot disagree with the Board that it is irrelevant that the two New Hampshire examinations Dr. Tinner sat for were only six months apart. The length of time between examinations has no bearing on whether scores were substituted. Thus, we find unpersuasive Dr. Tinner's argument that his final score, as computed by New Hampshire and urged for adoption by the District, was not a result of scrambling.

## V.

In sum, although the Board's single sitting requirement may result in an unwelcome outcome for applicants situated similarly to Dr. Tinner, "it is the Board's duty to protect the general public from unqualified physicians, and th[is] requirement rationally serves that purpose." *Roberts, supra,* 577 A.2d at 327 (citing *Donahue, supra,* 562 A.2d at 123). In *Roberts,* the Board's decision to require a weighted average score of 75 was at issue. Here, we consider the Board's single sitting requirement for pre–1985 FLEX examinees. In explaining its use, the Board developed that the organization that framed that test strongly recommended the single sitting requirement and that a substantial majority of other jurisdictions require it. The augmented record now includes the written view of a former chair of the FLEX Clinical Sciences Committee that to do otherwise could cause confusion among examinees because the passing scores in some states might not be accepted in other states and his further view that the requirement maintained the integrity of licensing laws which are for the protection of the public. Counsel for the Board also argues here that the single sitting requirement prevents an applicant from benefitting from scrambling by concentrating at a second sitting on the portion of the test he previously failed while not having to prepare for the portions he previously passed.

Employing the applicable standard of review, we conclude that the Board has adequately explained and justified its use of different requirements for pre– and post–1985 FLEX examinees and that the Board's approval is not inconsistent with the Act and applicable regulations. *See Draude v. District of Columbia Bd. of Zoning Adjustment,* 527 A.2d 1242, 1253 (D.C.1987). Therefore, we will not substitute our judgment for the Board's opinion that, as recommended by the Federation, a single sitting requirement for applicants who seek licensure based on the pre–1985 FLEX, is an appropriate measure for determining competence to practice in the District.[9]

*Affirmed.*

SCHWELB, Associate Judge, concurring:

Dr. Tinner has been licensed to practice medicine for twenty years in New York, for

---

9. We have examined the other arguments for relief advanced by petitioner but have not specifically addressed them in this opinion, and find them unpersuasive.

eighteen years in New Jersey, and for six years in Maryland. It appears to be undisputed that he has an unblemished record as a physician. Under these circumstances, I do not see how it can significantly affect his qualifications for the practice of medicine in the District that, when he passed the FLEX in New Hampshire twenty-one years ago, he did so in two sittings instead of one. I suspect that, for no persuasive reason, patients in the District are being deprived of the services of an experienced doctor, and that Dr. Tinner is unfairly being denied the opportunity to practice in the District.

Counsel for the Board insists that the Board "was entitled to enforce its FLEX requirements strictly." Assuming that this is so, I believe that in this case, the exercise of a little flexibility with regard to the FLEX would have served justice and common sense.

I raised most of these issues, however, in my dissenting opinion in *Roberts v. District of Columbia Bd. of Medicine,* 577 A.2d 319 (D.C.1990). My colleagues in the majority were not persuaded. I do not believe that the present case can fairly be distinguished from *Roberts* [1] with respect to the questions which divided the court in that case. Accordingly, I concur in the judgment of the court.

---

1. I note, however, that following our remand, Dr. Roberts was admitted to practice in the District.