[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff appeals from a June 12, 2001 final decision of the Board of Examiners for Professional Engineers and Land Surveyors ("the board of examiners"), ordering the plaintiff to discontinue from offering to practice land surveying or conveying the impression to the public that it is a Connecticut land surveyor. This appeal has been taken pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act ("UAPA"). CT Page 4099
The record shows as follows. On October 27, 1999, William Giel, a Connecticut licensed land surveyor, wrote to the Department of Consumer Protection ("the department") requesting the department to investigate the plaintiffs activities in Connecticut and enter a cease and desist order until the plaintiff is properly licensed in Connecticut. (Return of Record ("ROR"), Item 7, p. 2.) On October 10, 2000, the board of examiners issued a two-count administrative complaint against the plaintiff, alleging that the plaintiff was offering to practice land surveying in Connecticut without having obtained a corporate registration from the board of examiners (count one); and that the plaintiff used a title or description that tended to convey to the public that the plaintiff was authorized to engage in land surveying in Connecticut (count two).
A contested hearing was held before the board of examiners on January 16, 2001. (ROR, Item 1.) Subsequently, the board of examiners made the following relevant findings of fact (ROR, Item 21):
 1. The [plaintiff] is a corporation and has its principal place of business in Akron, Ohio.
 2. At all relevant times the [plaintiff] did not possess a corporate registration to practice, or offer to practice, land surveying issued pursuant to Conn. Gen. Stat. § 20-306a.
 3. In March, 2000, the [plaintiff] mailed postcards to recipients in the State of Connecticut. The postcards contained, in part, the following language:
 "We provide the real estate community a means to contact one source to obtain ALTA/ACSM Land Title Surveys anywhere in the United States. . . ."
 *** 5. The [plaintiff] recruits licensed surveyors to bid on and perform nonresidential surveying projects located in the licensees' states. . . .
 ***
7. According to its web site literature, the [plaintiff] is more than just a referral service or matchmaker between clients and local surveyors. For example, as part of its "Survey Management Service," the [plaintiff] evaluates a client's land surveying needs, solicits bids from firms on its database, chooses the firm to perform the CT Page 4100 service, reviews the surveys for compliance with industry standards, meets the [plaintiffs] survey standards, and includes a prominent seal and title box for the [plaintiff] on the surveys. . . .
 *** 9. The [plaintiff] reviews the performance of the locally licensed surveyor. The [plaintiff] reviews the descriptions of the survey compared to the actual drawing itself . . .
Based upon these factual findings, the board of examiners concluded that the plaintiff was offering to practice land surveying and conveying the impression to consumers that it was authorized to provide land surveying in Connecticut in violation of General Statutes § 20-302. Accordingly, the plaintiff was ordered to immediately discontinue from these activities until it obtained a corporate registration to practice land surveying pursuant to chapter 391 of the General Statutes. (ROR, Item 21.)
The plaintiff has appealed from this order.[1] Before addressing the merits, however, the court has raised a jurisdictional question under the UAPA, General Statutes § 4-183 (c). The plaintiffs appeal dated August 9, 2001, names the department as the "appellee." The summons directs "Any Proper Officer" to serve the "Department of Consumer Protection, Attn: Board of Professional Engineers and Land Surveyors." The officer's return to court by Marshal Robert J. Tasillo, dated August 9, 2001, indicates that a true and attested copy of the appeal was left with Barbara A. Syp, Board Administrator, Department of Consumer Protection. Ms. Syp accepted service for the named defendant, Department of Consumer Protection. On December 27, 2001, the plaintiff amended its appeal with the permission of the court. It stated that: "The Appeal, more properly, should name as the appellee the State of Connecticut Board of Examiners For Professional Engineers And Land Surveyors." (Appellant Bock Clark Corporation's Motion to Amend its Administrative Appeal, p. 1.) The amended appeal filed on January 22, 2002, states that the final decision was rendered by the chair of the Board of Examiners For Professional Engineer and Land Surveyors, Department of Consumer Protection.
Pursuant to General Statutes § 4-183 (c), an administrative appeal must be served on the agency tat rendered the final decision or the office of the attorney general within forty-five days of the mailing of the final decision. The failure to meet this deadline is a jurisdictional defect in the appeal. Glastonbury Volunteer Ambulance Assn., Inc. v.FOIC., 227 Conn. 848, 852-54 (1993). In addition, the "agency that rendered the decision" is the board itself, not the umbrella department. CT Page 4101Nanavati v. Department of Health Services, 6 Conn. App. 473, 475 (1986);Donis v. Board of Examiners in Podiatry, 207 Conn. 674, 682 (1988) ("We agree with Nanavati that the board in this case is the `agency' upon which the appeal must be served under § 4-183.")[2] Therefore, the plaintiff had to serve its complaint on the board of examiners within forty-five days of June 28, 2001. The fact that the plaintiff corrected its complaint in December, 2001 to indicate that the board had rendered the decision and is the defendant would not affect the timely service requirement.
The Glastonbury court has noted an exception, however: "If there is merely an arguable defect in the process timely served on the agency . . . the court does not lack subject matter jurisdiction over the appeal." (Citation omitted; internal quotation marks omitted.) GlastonburyVolunteer Ambulance Assn., Inc. v. FOIC, supra, 227 Conn. 856. Following this dictum, this court ruled in Manchester v. Office of ConsumerCounsel, Superior Court, judicial district of New Britain, Docket No. 501043 (May 10, 2000, Cohn, J.) that when a plaintiff has correctly served the agency rendering the final decision, but has accidentally omitted the agency from the citation, this is not a fatal jurisdictional defect. Here, the marshal's return shows that on August 9, 2001 Barbara Syp, the board of examiners administrator, was served with a copy of the plaintiffs appeal.[3] Therefore, the court concludes that service was timely made upon board of examiners within the requisite forty-five days and that the appeal is not defective.[4]
Turning to the merits of the case, the plaintiff claims[5] that the board of examiners erroneously concluded that it was offering to practice surveying or giving the impression that it was a surveyor. Thus, the issue before the court turns on whether legally or factually the plaintiff was a "land surveyor" as that term is defined in General Statutes § 20-299 (2).
In deciding this issue, the court must apply the standard of review known as the substantial evidence rule. "The substantial evidence rule governs judicial review of administrative fact-finding under UAPA. General Statutes § 4-183 (3)(5) and (6). Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . ." (Internal quotation marks omitted.)MacDermid, Inc. v. Dept. of Environmental Protection, 257 Conn. 128,136-37 (2001).
"Even as to questions of law, [t]he court's ultimate duty is only to CT Page 4102 decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [W]hen a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . ." (Citations omitted; internal quotation marks omitted.) Id., 137. "[I]t is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . When an agency has expertise in a given area and a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts." (Citations omitted; internal quotation marks omitted.) Id., 138-39 (2001); see also Connecticut Alcohol Drug Abuse Commission v. FOIC,233 Conn. 28, 39 (1995) ("Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . .")
Here, the court has the duty to construe the definitional statute, but must give deference to the experience of the board of examiners in its applying the statute to the facts found. Wasfi v. Department of PublicHealth, 60 Conn. App. 775, 783 (2000), cert. denied, 255 Conn. 932
(2001); Pet v. Department of Public Health Services, 228 Conn. 651, 667
(1994).
Section 20-299 (2) defines "land surveyor" as a qualified person who offers to practice land surveying, including: "(A) Measuring, evaluating or mapping elevations, topography, planimetric features or land areas of any portion of the earth's surface . . . (C) measuring, evaluating, mapping, monumenting or otherwise marking on the ground, property boundary lines, interior lot lines of subdivisions, easements, rights-of-way or street lines; [and] (D) measuring, evaluating, mapping or marking on the ground, the horizontal location of existing or proposed buildings, structures or other improvements with respect to property boundary lines, building, setback, zoning or restriction lines, existing or proposed interior lines, easements, rights-of-way or street lines. . . ."
Section 20-299 (2) was amended by Public Act 2000, No. 00-192, § 53. Previously, the section defined "land surveyor" to mean a person who practices that branch of engineering known as land surveying and "includes CT Page 4103 surveying and measuring the area of any portion of the earth's surface" for the correct determination of boundary lines. General Statutes (Rev, to 1999) § 20-299 (2). The prior definition was replaced in 2000 to give "a more current definition." Office of Legislative Research, Summary of 2000 Public Acts, p. 11.
The amended definition adds the function of "evaluating." Webster's Third New International Dictionary defines "evaluate" to mean "[t]o examine and judge concerning the worth, quality, significance, amount, degree or condition of. . . ." Adding the function of "evaluating" to the definition was a broadening of the prior definition's recitation of the duties of a land surveyor. Miller v. Department of ProfessionalRegulation, 658 N.E.2d 523, 528 (Ill.App. 2 Dist. 1995) (engineer became subject to licensing regulation when legislature amended definition of "professional engineer" to include evaluation).
The plaintiff argues that it merely "facilitates the process of obtaining land surveys by contracting with licensed land surveyors to perform surveys for its clients," and "never conducts" the activities set forth in General Statutes § 20-299 (2). (Emphasis in original.) (Appellant Bock Clark Corporation's Brief in Support of its Administrative Appeal, p. 11.) The plaintiff points to records items 9, 11, and 13 to argue that it does not prepare surveys or control the local surveyor. Furthermore, it argues that its "clients and consumers readily understand" that it "simply provides a service for the procurement of land surveys." (Appellant Bock Clark Corporation's Brief in Support of its Administrative Appeal, p. 14.)
On the other hand, the board found that the plaintiff reviews the completed surveys for compliance with industry standards and its own survey standards before turning the survey over to the client. (ROR, Item 21, p. 3, ¶ 7.) The plaintiff also "reviews the performance of the locally licensed surveyor. The [plaintiff] reviews the descriptions of the survey compared to the actual drawing itself" (ROR, Item 21, p. 3, ¶ 9; Item 1, Transcript of Administrative Hearing, Testimony of James Bock, pp. 16, 31, 55; Item 6.) The Board could logically conclude that.the plaintiff's actions in comparing the information in its file with the survey as provided by the local surveyor was an evaluative function meeting the statutory definition.
This is not a "cursory" review as the plaintiff contends. The plaintiff gives its customers more than a non-technical informational report. Cf.E.I.S., Inc. v. Connecticut Board of Registration, 200 Conn. 145, 149-50
(1986); see Dick Weatherston's A.M. Service v. Minnesota Mutual LifeInsurance Co., 100 N.W.2d 819, 823 (Minn. 1960) (where the plaintiff's preliminary calculating and design work was found to require an expertise CT Page 4104 in engineering and fell under the state's definition of a professional engineer.)
In concluding that the plaintiff offered to practice land surveying and gave the impression that it was authorized to practice land surveying, the board of examiners correctly applied the law to the facts found. Therefore, the plaintiffs appeal is dismissed.
 ___________________ Henry S. Cohn, Judge